278 So.2d 781 (1972)
STATE of Louisiana
v.
Napoleon MOORE.
No. 52720.
Supreme Court of Louisiana.
November 28, 1972.
Dissenting Opinion December 4, 1972.
On Rehearing May 7, 1973.
Dissenting Opinion May 17, 1973.
Dissenting Opinion June 8, 1973.
Murphy W. Bell, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty. Gen., LeRoy A. Hartley, Sp. Asst. Atty. Gen., Sargent Pitcher, Jr., Ossie B. Brown, Dist. Attys., Ralph L. Roy, Asst. Dist. Atty., for plaintiff-appellee.
PER CURIAM.
Defendant, Napoleon Moore, was tried by jury for the crime of aggravated rape *782 (R.S. 14:42). The defendant was found guilty without capital punishment and sentenced to life imprisonment in the State Penitentiary. On this appeal, the accused relies on two bills of exceptions involving the state's use of another, separate incident of aggravated rape which allegedly occurred September 14, 1971 in Foster Hall on the Louisiana State University campus. The crime for which the defendant was tried occurred September 18, 1971 in the Life Science Center Building also on the same campus.
Both bills of exceptions pertain to the same issue, that is, the allegation that the defendant was denied a fair trial and due process of law by reason of the prosecution's introduction of extensive evidence relating to the prior extraneous crime (the aggravated rape of September 14th), although no prior conviction for this act had been achieved against the defendant. In his first bill, defense counsel objected to the Assistant District Attorney's assertion in his opening statement of his intent to offer evidence of the prior assault to proof up the charge for which the defendant was on trial, and asked for a mistrial which the trial judge denied. The second bill was taken to a denial of defendant's Motion for a New Trial on essentially this same ground, including objections to later references throughout the trial to this same prior extraneous crime.
Also in his motion for a new trial, defense counsel listed additional grounds but does not argue them in his brief, therefore we may consider them abandoned. Consequently, we address ourselves to his major specification of error concerning the State's use of the prior offense in the prosecution of this case.
Under the provisions of La.R.S. 15:441, 445 and 446, and recent jurisprudence, this Court has repeatedly held that in sexual offenses, such as rape, evidence of similar acts of the defendant is admissible especially when as here the offense referred to occurred closely related by time, method and in the same neighborhood as the offense charged. State v. Crook, 253 La. 961, 221 So.2d 473 (1969); State v. Hills, 259 La. 436, 250 So.2d 394 (1971); and State v. Smith, 259 La. 515, 250 So.2d 724 (1971).
The defendant was positively identified at the trial by the victim of the first rape (R-182, R-186-188) which allegedly occurred September 14th. He was also positively identified by the victim of the rape four days later for which he is here prosecuted.
We do not find the defendant's contention tenable. These bills are without merit.
For these reasons, the conviction and sentence are affirmed.
BARHAM, J., dissents and will assign reasons.
TATE, J., concurs and assigns reasons.
DIXON, J., dissents.
TATE, Justice (concurring).
The writer believes that the proof of the other crimes under La.R.S. 15:445 and 446 is not admissible to prove intent in crimes other than those in which specific intent is required. See his dissent in State v. Bolden, 257 La. 60, 241 So.2d 490 (1970); see also the dissent by my brother Barham in that case and in State v. Crook, 253 La. 961, 221 So.2d 473 (1969). See also 30 La.L.Rev. 321-22 (1969) and Note, 46 Tul.L.Rev. 336 (1971). Neither specific intent nor knowledge is an element of the present crime for which the defendant would be properly convicted upon proof simply that he committed the act of rape, La.R.S. 14:42.
However, since a majority of the present court has rejected the opinion thus expressed, the writer concurs in the decision in the present affirmance.
Nevertheless, I must once again express the view that this court has misinterpreted *783 the legislative intent of La.R.S. 15:445 and 446 and my strong belief it should reconsider the application of 446 so as to exclude proof of other crimes in any prosecution not requiring proof of specific intent. An examination of the facts of this case will disclose the serious prejudice to the accused.
Here, the rape for which the accused was on trial allegedly took place in the Life Science Building on the LSU Baton Rouge campus in the afternoon. Supposedly to show intent, full evidence was admitted in regard to another rape which allegedly occurred four days earlier in Foster Hall, on the same campus. The modus operandi was different; in one, for instance, the rapist posed as a janitor and talked with the victim before the assault, in the second (for which the defendant is tried), the rapist just grabbed the victim and dragged her down the hall.
The state could not have tried the defendant for both crimes under the joinder articles, La.C.Cr.P. Art. 490 et seq. The obvious legislative motive in requiring severance is to prevent prejudice to a defendant where he might be convicted for a crime of which he is innocent on evidence that he committed a different crime.
Here, even if there were a reasonable doubt of his guilt of the present rape, the jury may have convicted the defendant because it believed him guilty of the other rape not charged here. Or the evidence in each case, if separately and independently tried, might be insufficient to convict the defendant. It is impossible on appellate review to distinguish between the strong case and the weak case, where there is a whisper of evidence, for on appellate review where there is any evidence at all, this court cannot disturb the verdict.
I should add, that on a variety of technical legal justifications, the State also introduced evidence that the defendant was a sneak thief (or suspected of being one), where the prejudice to the defendant greatly outweighed the probative value in determining whether he was guilty of the rape for which he is presently charged.
A review of the record indicates that, while the defendant may have been guilty of the rape for which charged, the record contains so much emphasis upon greatly prejudicial testimony relating to other misconduct as to make the fairness of the trial greatly subject to question.
In the record before us, about 66 out of 300 pages of trial testimonyi. e., about 20%was devoted to proof of the other crimes. Further, of the 150 lines of the state's opening statement about 77 lines (50%) were dedicated to the other rape, about 40 lines (25%) being devoted to his alleged role as a sneak thief, and the remainder (about 23%) being devoted to describing the crime of rape and the rape with which charged. Similarly, about 38% of the state's closing argument, and its entire rebuttal argument, concerned the other crimes and misconduct. The prosecutor's argument is replete with emphasis upon the defendant's committing two crimes.[1]
It is not unimaginable to me that convictions such as the present, founded to a great degree upon prejudicial testimony of other activities not really probative of whether or not the accused committed the crime with which charged, may be regarded as so fundamentally unfair as to amount to a denial of due process. In my opinion, the conscientious prosecutor desiring to convict the guilty, but only after a fair trial, and then to safeguard such conviction, will do well to avoid reliance upon *784 tactics such as the present. Almost certainly this court will in the future have to reexamine its interpretations of the statute permitting such tactics, which in my opinion are beyond any legislative intent and which verge on a denial of due process.
Reviewing the whole record, it is difficult to believe that the defendant received a fair trial in the traditional American sensethat he was convicted on a trial based solely on evidence relevantly directed toward his guilt or innocence of the offense with which charged, rather than upon proving that he was a bad, bad man who should be put away. Under the present doubtful interpretations of the admissibility of evidence of other crimes, and considering the limited nature of appellate review, however, I concur in this affirmance; but with great reservations.
BARHAM, Justice (dissenting).
Under the facts as given by Mr. Justice Tate in his concurrence I must dissent. See my dissents in State v. Crook, 253 La. 961, 221 So.2d 473 (1969); State v. Bolden, 257 La. 60, 241 So.2d 490 (1970); and State v. Hills, 259 La. 436, 250 So.2d 394 (1971).

ON REHEARING
DIXON, Justice.
We granted a rehearing in this case because of the use of evidence of other criminal acts by the prosecution.
The defendant was indicted for the aggravated rape of a married woman on September 18, 1971. In his opening statement, the prosecutor stated that he would produce evidence of another rape committed on the LSU campus on September 14, 1971, "in an effort to prove ... intent, guilty knowledge and mode of operation, and not for the purpose of proving this crime charged ..."
The prosecution relied on numerous prior decisions of this court, in which the use of such evidence has been approved.[1]
Our prior cases interpreted R.S. 15:441, 445 and 446[2] as permitting the introduction of extraneous offenses by the prosecution. This interpretation was reached despite the provisions of R.S. 15:444:
"If a statute has made it a crime to do a particular act, no further proof of intent is required than that accused voluntarily did the act; and any evidence that he did not know such act to be forbidden by law is inadmissible."
We find that no proof of intent[3] was required in this prosecution, and that it was error to admit evidence of other offenses.
The rape with which the defendant is accused occurred on Saturday, September 18, 1971 at about 4:00 p. m. A young black man approached the married woman, who *785 was about twenty-eight years old, from the rear while she was studying in a vacant classroom in the Life Science Building on the LSU campus in Baton Rouge. She was dragged out of the room, across the hall and into a ladies restroom about thirty to fifty feet away from the classroom, where the rape occurred.
The other offense, offered ostensibly to prove intent, etc., occurred in Foster Hall which is about four or five blocks distant from the Life Science Building. The date was Tuesday, September 14, 1971, and the time was about 8:30 p. m. The victim, an unmarried woman, about twenty years old, was studying in a vacant classroom, but classes were in session at the other end of the hall. Her assailant, a black man, twice entered the room where she was studying. She mistook him for a janitor, and he acted as if he were a custodial employee. The second time he entered the room, he closed the blinds and attacked her in the classroom.
In State v. Prieur, La., 277 So.2d 126 (1973) and State v. Jordan, La., 276 So.2d 277 (1973), we held evidence of extraneous offenses irrelevant and prejudicial to the accused.
This court's previous interpretation of R.S. 15:445 so broadened that section's application that the admission of evidence of other crimes in order to show criminal intent or "guilty knowledge" became the rule, rather than the exception. A review of the articles of the Code of Criminal Procedure of 1928, from which the articles on evidence in Title 15 of the Revised Statutes were taken, and the English source material[4] for the evidence section of the Code of Criminal Procedure of 1928 demonstrates that such interpretation is erroneous.
The brevity of our articles on evidence is sometimes misleading. They do not appear to be original; their phraseology, in general, can be found in English decisions. A comparison of our articles with the less abbreviated English counterparts helps to understand their significance.
First, our R.S. 15:435 states, "The evidence must be relevant to the material issue." The impact of this bland little sentence is easily overlooked. Its English counterpart is: "... nothing may be given in evidence which does not directly tend to the proof or disproof of the matter in issue." (Emphasis added). Archbold, Pleading, Evidence & Practice in Criminal Cases, 34th Ed., §§ 1015, 1016. Correctly interpreted, R.S. 15:435 means that, in a criminal case, no evidence shall be admitted that is not relevant to (tending to prove or disprove) the matters in issue.
In explaining whether the evidence of other crimes might be relevant, the "matter in issue" must be real and genuine, and not one which the prosecution conceives to be at issue merely because of the plea of not guilty. Archbold, 34th Ed., § 1016. "The mere theory that a plea of not guilty puts everything material in issue is not enough for this purpose. The prosecution cannot credit the accused with fancy defences in order to rebut them at the outset *786 with some damning piece of evidence." R. v. Thompson (1918) A.C. 221, 232.
With this basic rule (that no evidence is admissible which does not tend to prove or disprove the matter in issue) and with an honest understanding of "the matter in issue," the English authorities proceed to explain that merely because relevant evidence bearing on questions at issue also tends to show the commission of other crimes by the accused does not make such evidence inadmissible. Nevertheless, even though such evidence might not be inadmissible under the rules of relevancy, its probative value must be weighed against its prejudicial effect, and the trial court has the discretion to exclude it if its prejudice to the defendant is too great.[5]
Two leading cases on the question are discussed by English writers. In the Makin case, evidence of numerous bodies of children buried on the premises occupied by the defendants was held admissible in their trial for the murder of one child, whose body was identified.
The rule in the Makin case was again before the House of Lords in Harris v. Director of Public Prosecution (1952) A.C. 694, 36 Cr.App.R. 39. In that case a uniformed patrolman was charged with eight counts of breaking and larceny. A fruit and vegetable market had suffered eight thefts of money. In each case, the thefts were of a small amount of money and were of only a part of that which was accessible to the thief. On the eighth occasion, detectives, alerted by an alarm, observed the defendant within the locked premises near where the money was located. When the detectives approached the defendant, he disappeared, only to return a few minutes later, ostensibly to assist the two detectives. A small amount of money was missing and was not on the person of the defendant, but was found hidden in a bin nearby. The accused was acquitted on the first seven counts of theft, and convicted on the eighth.
The rule in the Makin case was affirmed, but with emphasis on an important "second proposition," which "flows from the duty of the judge when trying a charge of crime to set the essentials of justice above the technical rule if the strict application of the latter would operate unfairly against the accused." (Harris, supra, at p. 707). "A criminal trial in this country is conducted for the purpose of deciding whether the prosecution has proved that the accused is guilty of the particular crime charged, and evidence of `similar facts' should be excluded unless such evidence has a really material bearing on the issues to be decided." (Harris, supra, at p. 710).
The Harris case went on to demonstrate that there were only two issues presented in the eighth count (the only count before the court, the defendant having been found not guilty on the other seven). Those issues were:
"(1) Was the money stolen on July 22? (2) Is it proved that it was the appellant who stole it? Previous events could not confirm (1), which indeed was proved *787 beyond dispute. As for (2), the accused denied that he was the thief and the fact that someone perpetrated the earlier thefts when the accused may have been somewhere in the market does not provide material confirmation of his identity as the thief on the last occasion. The case against him on July 22 depended on the facts of that date. Yet the jury may well have been swayed, however illogically, in reaching its verdict on the eighth count by the earlier evidence." (Harris supra, p. 711).
Harris' conviction was reversed. In some English cases, the statement is made that evidence of other crimes is not relevant, and has no probative value to prove the defendant's guilt. Other cases note that, in a sense, proof of bad character, or proof that the defendant committed such a crime on another occasion is logically related to a determination of guilt of the crime before the court.
Evidence of previous criminal activity does affect the opinion of those who sit in judgment. In fact, evidence of prior criminal activity has such a strong influence on the finders of fact, reasonable or unreasonable, logical or illogical, that such evidence, for this reason and this reason alone, may be "too prejudicial." If the identity of the accused rapist is in doubt, it is too easy to believe that if he had committed such an offense before he would do so again. Rape is a horrible crime, committed by bad men. If the defendant committed such an offense before, it is too easy to believe that he is a bad man, and capable of the act with which he stands accused.
Clearly, evidence which only tends to show the bad character of the accused is inadmissible, except in rebuttal when the accused has introduced evidence to show his good character. R.S. 15:481. Even for impeachment purposes, our statutes limit evidence of other crimes to former convictions. No prior arrest, indictment or prosecution is admissible. R.S. 15:495. And when, in general, credibility is attacked, the inquiry cannot go into "particular acts, vices or courses of conduct." R.S. 15:491.
However, in spite of the prejudicial nature of evidence of other offenses, criminal cases cannot be tried in an antiseptic vacuum.[6] Matters which are logically *788 relevant to issues before the jury should not be excluded merely because they show the accused has committed other offenses. Nevertheless, even if relevant, because the evidence of other offenses is so strongly prejudicial "the greatest care ought to be taken to reject such evidence, unless it is plainly necessary to prove something which is really in issue." R. v. Bond (1906) 2 K.B. 389, 417.
As for the prosecution of Napoleon Moore for the rape of September 18, the evidence of the rape of September 14 must meet two requirements to be admissible: (1) was it relevant to an issue of the case? (2) if relevant, was it too prejudicial?
Because we answer the first question in the negative, the second need not now be considered in detail. It should be noted, however, that there is always this second qualification to the admission of evidence of other offenses in a criminal prosecution: even if otherwise admissible, if the prejudicial effect outweighs the probative value of evidence of other offenses, such evidence should be excluded.
The evidence of the rape of September 14 did not in any way tend to prove the identity of Napoleon Moore as the person who committed the rape of September 18. Except that the two victims were in classrooms when approached by their assailants, there is no evidence of a system, a design, a plan or modus operandi. The evidence tends only to prove the bad character of Napoleon Moore, an inquiry prohibited in Louisiana. The evidence of defendant's guilt of the rape of September 14 does not tend to show that he is the one who committed the rape of September 18.
The conviction and sentence are reversed, and the case is remanded for a new trial.
SANDERS, C. J., dissents and assigns written reasons.
SUMMERS, J., dissents and will assign reasons.
MARCUS, J., dissents.
SANDERS, Chief Justice (dissenting).
In this tragic decision, the majority sets aside the conviction of aggravated rape, by overruling a long line of decisions of this Court applying our statutes. These decisions hold that in the trial of a defendant for rape, evidence of another rape, especially when closely related in time and method, is admissible to prove intent and modus operandi. See LSA-R.S. 15:441, 445, 446; State v. Hills, 259 La. 436, 250 So.2d 394 (1971); State v. Smith, 259 La. 515, 250 So.2d 724 (1971); State v. Bolden, 257 La. 60, 241 So.2d 490 (1970); State v. Crook, 253 La. 961, 221 So.2d 473 (1969); State v. Ferrand, 210 La. 394, 27 So.2d 174 (1946); State v. Cupit, 189 La. 509, 179 So. 837 (1938); State v. Mischiro, 165 La. 705, *789 115 So. 909 (1928); State v. Fuller, 164 La. 718, 114 So. 606 (1927); State v. McCollough, 149 La. 1061, 90 So. 404 (1922); State v. Wichers, 149 La. 643, 89 So. 883 (1921).
The rule of admissibility prevails in many other jurisdictions. See, e. g., Thomas v. State, 68 Okl.Cr. 1, 95 P.2d 658 (1939); State v. Finley, 85 Ariz. 327, 338 P.2d 790 (1959); Gunter v. State, 223 Ga. 290, 154 S.E.2d 608 (1967).
Under Article 814 of the Louisiana Criminal Procedure, attempted aggravated rape is a responsive verdict. An essential element of attempted aggravated rape is a specific intent to commit the crime. LSA-R.S. 14:27; State v. Johnson, 228 La. 317, 82 So.2d 24 (1955); State v. Ferrand, supra.
The general rule is correctly stated in 75 C.J.S. Rape § 24, p. 489 as follows:
"The specific intent to commit rape is an essential element of attempt to rape, of assault with intent to rape, of an attempt to commit an assault with intent to rape, and of an attempt to commit aggravated rape. The required intent has been variously characterized as the vital element, the crucial question, the essence, the gravamen, or the gist of these offenses. Specifically, the intent must be to have intercourse with the female without her consent and against her will, by force overcoming her resistance, and without such an intent there can be no assault with intent to rape."
Hence, evidence of the second rape was admissible to prove intent.
It was also admissible, however, to prove system, or modus operandi. Both rapes occurred in classroom buildings on the Louisiana State University campus only a few blocks from each other. They occurred during the same week. In each instance, the assailant found an LSU co-ed studying alone. In addition to the actual use of force, the assailant in each instance threatened to "bash" the victim's head in. The similarity is such that the evidence tends to show a common design.
As we stated in State v. Spencer, 257 La. 672, 243 So.2d 793 (1971), evidence of other offenses is admissible when they are "of a like nature and exhibit like methods or plans of operation." This is the majority rule throughout the United States. In my opinion, it applies here.
For the reasons assigned, I respectfully dissent.
SUMMERS, Justice (dissenting).
Conceding that "The prosecution relied on numerous prior decisions of this Court, in which the use of such evidence has been approved.", the Court in total disregard of the reality of this bestial crime, embarks upon a spurious academic dialogue in an effort to justify its reversal of this conviction.
In a line of decisions extending over a period of 52 years, we have approved the rule of law that in such cases evidence of another rape by the same accused when related in time and method is admissible to prove intent and modus operandi. State v. Hills, 259 La. 436, 250 So.2d 394 (1971); State v. Smith, 259 La. 515, 250 So.2d 724 (1971); State v. Bolden, 257 La. 60, 241 So.2d 490 (1970); State v. Crook, 253 La. 961, 221 So.2d 473 (1969); State v. Ferrand, 210 La. 394, 27 So.2d 174 (1946); State v. Cupit, 189 La. 509, 179 So. 837 (1938); State v. Mischiro, 165 La. 705, 115 So. 909 (1928); State v. Fuller, 164 La. 718, 114 So. 606 (1927); State v. McCollough, 149 La. 1061, 90 So. 404 (1922); State v. Wichers, 149 La. 643, 89 So. 883 (1921).
In addition the legislation of this State on the subject, which the opinion relegates to a footnote, reads as follows:
La.R.S. 15:441. "Relevant evidence is that tending to show the commission of the offense and the intent, or tending to *790 negative the commission of the offense and the intent.
Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible."
La.R.S. 15:445. "In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction."
La.R.S. 15:446. "When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged."
The accepted and long-established interpretation of this clear legislative expression has been disregarded; the legislation has essentially been repealed, and the Court has, instead, formulated a new rule of law. The effect of applying the new rule which this opinion mandates is to reverse this conviction and sentence. A new trial must be had, in which the victims of this defendant's crimes must again appear in public, in Court, and recount the gruesome details and the indignities to which they were subjected. If this is not feasibleand often it is notthis defendant must be discharged. This decision should offend the sensibilities of all decent citizens; it most assuredly offends every recognized version of judicial restraint.
I respectfully dissent.
NOTES
[1] The prosecutor, while stating the trial was only for the latter assault, spoke in terms like: "You have two young rape victims ..." (Tr. 427), "these two young ladies, the two young victims..." (Tr. 431, lines 18-19), ".. about raping that womantwo young ladies" (Tr. 432, line 23), "those two little girls ..." (Tr. 433, line 17). "In this case we have two victims ..." (Tr. 433, lines 28-29), "these two young ladies, these two victims ..." (Tr. 444, lines 29-30), and "his conduct against our society and particularly against these two young ladies." (Tr. 445, lines 28-29).
[1] State v. Smith, 259 La. 515, 250 So.2d 724 (1971), State v. Hills, 259 La. 436, 250 So.2d 394 (1971), State v. Crook, 253 La. 961, 221 So.2d 473 (1969).
[2] R.S. 15:441. "Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent.

"Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible."
R.S. 15:445. "In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction."
R.S. 15:446. "When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged."
[3] Aggravated rape is defined in R.S. 14:42 as follows:

"Aggravated rape is a rape committed where the sexual intercourse is deemed to be without the lawful consent of the female because it is committed under any one or more of the following circumstances:
"(1) Where the female resists the act to the utmost, but her resistance is overcome by force.
"(2) Where she is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
"(3) Where she is under the age of twelve years. Lack of knowledge of the female's age shall not be a defense.
"Whoever commits the crime of aggravated rape shall be punished by death."
[4] R.S.1870, Sec. 976. "All crimes, offenses and misdemeanors shall be taken, intended and construed, according to and in conformity with the common law of England; and the forms of indictment (divested, however, of unnecessary prolixity), the method of trial, the rules of evidence, and all other proceedings whatsoever in the prosecution of crimes, offenses and misdemeanors, changing what ought to be changed, shall be according to the common law, unless otherwise provided."
[5] "The decision in Makin v. Att.-Gen. for N.S.W., was recently approved by the House of Lords in Harris v. Director of Public Prosecution (1952) A.C. 694; 36 Cr.App.R. 39, where it was laid down that the prosecution may adduce all proper evidence tending to prove the charge against the prisoner, including evidence tending to show that the prisoner has been guilty of criminal acts other than those covered by the indictment without waiting for the prisoner to set up a specific defence calling for rebuttal. Evidence of similar facts may properly be admitted to prove mens rea or intent, as well as to rebut a possible defence of accident. Even though such evidence is strictly admissible, the judge has a discretion to exclude it if its prejudicial effect to the prisoner would be out of all proportion to its evidential value. See also R. v. Sims (1946) K.B. 531; 35 Cr.App.R. 148, and Noor Mohamed v. R. (1949) A.C. 182, and the explanation of passages in the judgments in these cases given in Harris v. Director of Public Prosecutions and R. v. Hall (1952) 1 K.B. 302; 35 Cr.App.R. 167." § 1017, Archbold, 34th Ed.
[6] In R. v. Straffen (1952) 2 Q.B. 911, 36 Cr.App.R. 132, the court said:

"That being the law, the question is whether the evidence in the present case falls within the category of admissibility as being relevant to prove the crime charged by showing that it was the appellant who committed it. The grounds on which the admissibility of the evidence was urged by the Solicitor-General in the court below was the similarity of the deaths and of the circumstances surrounding them in the case of the two murders at Bath, on the one hand, with the circumstances of the murder at Little Farley, on the other. He stated the similarities to be, first, that each of the victims was a young girl; secondly, that each of the young girls was killed by manual strangulation; thirdly, that in each case there was no attempt at sexual interference or any apparent motive for the crime; fourthly, that in none of the three cases was there any evidence of a struggle; and, fifthly, that in none of the three cases was any attempt made to conceal the body although the body could have been easily concealed. These similarities were fortified by the medical evidence given by Dr. Gibson, dealing with the murders of Brenda Goddard and Cicely Batstone, and the pathologist, Dr. Teare, dealing with the murder of Linda Bowyer...."
"The evidence with regard to the deaths of Brenda Goddard and Cicely Batstone was admitted to show that the person who manually strangled those two little girls also manually strangled Linda Bowyer in similar circumstances. In the opinion of the court, that evidence was rightly admitted, not to show, to use the words of counsel for the appellant, that the appellant was a professional strangler, but to show that he strangled Linda Bowyer in other words, to identify the murderer of Linda Bowyer as being the same person as the person who had murdered the other two little girls in precisely the same way.... In the present case it is an abnormal propensity to strangle young girls without any apparent motive, without any attempt at sexual interference, and to leave their dead bodies where they can be seen and where presumably their deaths would be rapidly detected. In the judgment of the court, this evidence was admissible because it tended to identify the person who had murdered Linda Bowyer with the person who had confessed in his statements to having murdered in similar circumstances a year before Brenda Godard and Cicely Batstone. "Counsel for the appellant asked: How far, then, does the admissibility of such evidence go? Does it apply in the case of a burglar, housebreaker, thief, and so on? Lord Sumner, in Thompson's case, pointed out (1918) A.C. 235) that such persons were merely examples of those who fell within the genus of dishonest persons, but, speaking for myself, if the question of identity arose in a case of housebreaking and it were possible to adduce evidence that there was some peculiarity in relation to earlier housebreakings which was apparent also in the case of the housebreaking charged so as to stamp the accused man not only with the housebreaking charged but with the earlier housebreakings, and there was a confession or other evidence that he had committed the earlier housebreakings, that evidence would fall within the same principle of admissibility, not to prove his propensity for housebreaking, but to prove that he was the person who committed the housebreaking charged. Counsel for the appellant has conceded that, if the evidence was admissible, the discretion of the learned judge to admit it at the trial and not to reject it on the ground that its prejudicial effect was disproportionate to its probative value was judicially exercised, and, therefore, this appeal is dismissed."