286 So.2d 625 (1973)
STATE of Louisiana
v.
Donald L. PETTLE.
No. 53830.
Supreme Court of Louisiana.
December 3, 1973.
*626 Alfred Octave Pavy, Opelousas, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Special Asst. Atty. Gen., Morgan Goudeau, III, Dist. Atty., for plaintiff-appellee.
BARHAM, Justice.
Donald Pettle was tried and convicted of attempted murder of Beverly Marks and sentenced to serve seven years in the custody of the Department of Corrections. That sentence was made to run consecutively to a twenty-one year sentence imposed upon the defendant in the Fifteenth Judicial District Court upon his plea of guilty to manslaughter of Mona Kilchrist.
Defendant, en route to Metairie, Louisiana from Fort Polk, near Leesville, Louisiana, on December 24, 1969, picked up a *627 hitch-hiker, James Patterson, near Oakdale, Louisiana. The two stopped at the Rebel Lounge in Opelousas, Louisiana. Upon entering the lounge, the defendant proceeded to the men's rest room. Moments later he exited, seized a female bar attendant, Beverly Marks, and held a knife to her ribs in an attempt to force her to leave the lounge with him. While the defendant was holding Mrs. Marks, the victim of this particular crime of attempted murder, the lounge telephone rang and another female bar attendant, Mona Kilchrist, went to the telephone and answered the call. When the defendant's attention was diverted by the ringing telephone and Miss Kilchrist's movement to answer it, Mrs. Marks gained her release from the defendant and the defendant then seized Miss Kilchrist at the telephone. She was forced to leave at knife-point with the defendant and to enter his automobile. He drove away with her, with his knife drawn on her. Approximately one hour later Miss Kilchrist's body, nude and covered with stab wounds, was found near Lafayette on a road near the Evangeline Downs Race Track, a distance less than fifteen miles from the place where she was seized.
Some hours later, the defendant wrecked his automobile in Laplace, more than 100 miles distant from the place where the body was found. He was hospitalized because of the wreck and later placed under arrest. Officers from at least four jurisdictions participated in the investigation and arrest of the defendant. The defendant was permitted to plead guilty to manslaughter for the death of Miss Kilchrist in the Fifteenth Judicial District Court of Lafayette Parish, and received a sentence of twenty-one years. The trial and conviction we consider on this appeal from the Twenty-Seventh Judicial District Court, Parish of St. Landry, arose out of a charge of attempted murder of the first bar attendant, Mrs. Beverly Marks.
Twenty-seven bills of exceptions were reserved to rulings of the trial court. Nine of these bills were neither briefed nor argued, and are therefore considered abandoned.
BILL OF EXCEPTIONS NO. 2
This bill was reserved when the trial court denied defendant's motion to quash the information. Defendant's motion, based on a plea of former jeopardy, alleged that he had already been put in jeopardy for the killing of Mona Kilchrist (defendant had earlier entered a plea of guilty to manslaughter) and that the instant charge arose out of the same transaction or similar transaction or same offense.
Our Constitution, Article 1, Section 9, and the Fifth Amendment to the United States Constitution provide that no defendant may be placed in jeopardy twice for the same offense. Article 591 of the Code of Criminal Procedure reiterates this guarantee. Article 596 of the Code of Criminal Procedure outlines the requirements for double jeopardy. It provides:
"Double jeopardy exists in a second trial only when the charge in that trial is:
(1) Identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial; or
(2) Based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial."
Comment (d) of the Official Revision Comment explains the necessity of Clause (2) of the above cited article. It reads:
"(d) Clause (2) of the above Art. 596 is necessary to prevent multiple prosecutions for continuous offenses. For example, possession of stolen goods or narcotics may continue over a long period of time and may involve more than one object. Yet, obviously there should be *628 only one prosecution for what is in effect one criminal course of conduct."
In the recent case of State v. Richmond, 284 So.2d 317 (decided September 24, 1973) this Court held that a plea of former jeopardy could not avail a defendant who had been previously tried and convicted of the murder of one individual and was later tried and convicted of the murder of the first victim's spouse, even though both murders arose out of the same transaction, an armed robbery of a small grocery. Our decision in State v. Didier, 262 La. 364, 263 So.2d 322 (1972), where a plea of former jeopardy was held to be well founded, was discussed in Richmond. In Didier, this Court stated: "* * * Where the gravamen of the second offense is essentially included within the offense for which first tried, the second prosecution is barred because of the former jeopardy. * * *"
In the instant case, the killing of Mona Kilchrist and the attempted murder of Beverly Marks were distinct and separate offenses, albeit they arose out of what may be considered a continuing course of conduct. The gravamen of the second offense for which defendant was held accountable clearly is not essentially included in the first offense. This bill of exceptions is without merit.
BILLS OF EXCEPTIONS NOS. 4, 13, 19 and 20.
Defense counsel reserved these bills when the trial court denied defendant's motion to suppress certain tangible evidence and when various items of physical evidence were thereafter introduced. The motion and the objections were based on an allegation that the items introduced were obtained as a result of an illegal search and seizure made without a search warrant.
The following evidence was introduced at the trial and objected to:
1. A knifeThis weapon was used in the attempted murder of Beverly Marks and the murder of Mona Kilchrist. The knife was found at the scene of defendant's wrecked car in Laplace, placed under the car seat by a St. John the Baptist deputy and, one hour later, recovered by the same deputy at a wrecking service yard, to which the police had caused the wrecked automobile to be towed.
2. A ladies' chain beltThis evidence was recovered from underneath the seat of the defendant's car.
3. A red and white striped tee shirt This evidence was seized from the defendant by Lafayette Parish Sheriff's Department personnel after defendant's arrest.
4. A pair of brown pants with a blond hair caught in the zipperThis article of clothing was seized from the defendant's person after his arrest.
5. A pair of underwearThis evidence was seized from the defendant after his arrest.
6. Hair found on the front seat of defendant's automobileThis item was seized by Lafayette Sheriff's Department personnel after it was sighted, in plain view, on the automobile seat.
The knife was initially found by a St. John the Baptist Parish deputy outside of the car at the scene of the accident. At the time, the deputy had no reason to believe that there was any connection between the weapon and the commission of any crime. The deputy testified, however, that when he picked the knife up off the ground, he put it under the seat of the car so that it would not "fall into the wrong hands". The deputy further testified that he later removed the knife from where he had placed it in the car, after the car had been towed to a garage, because he then learned that it was possibly involved as a weapon in a murder.
Clearly, no search was involved in the ultimate recovery of the knife from the automobile. When intially discovered, the knife was in plain view of a law enforcement *629 officer who had a right to be at the location at which the view was obtained. State v. DiBartolo, 276 So.2d 291 (1973). The knife was placed out of "plain view" by the same officer, who subsequently recovered the knife. At the time of the seizure, the automobile was in the constructive custody of the police, having been brought to the towing yard at their direction. Cf. Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). We therefore believe that the knife, once in the lawful actual custody of the police, was, at the time of seizure, in constructive custody of the officer at the time of seizure and that the seizure does not contravene the Fourth Amendment guarantee against unreasonable searches and seizures.
The ladies' chain belt was recovered after defendant informed officers of its presence beneath the car seat. Defendant testified that he remembered giving a statement to the officers about the chain belt. The officer who had interrogated defendant testified that he was told of the existence and location of the belt and given consent to retrieve it. Under the circumstances, it affirmatively appears that the consent exception to search and seizure without a warrant is applicable.
The tee shirt, pants, and underwear were all recovered from defendant's person when he was booked by the Lafayette Parish authorities. Numerous federal circuit courts have ruled that a search of an arrestee is still incident to a lawful arrest when it is conducted within a reasonable time thereafter at the jail or place of detention rather than at the time and place of the arrest. See United States v. Gonzales-Perez, 426 F.2d 1283 (5th Cir. 1970) and numerous cases cited therein. We therefore believe that the seizure of defendant's clothes was reasonable and not in contravention of the Fourth Amendment.
The seizure of the hair found on the front seat of defendant's automobile clearly appears to be legal. At the time the seizure was made, in the towing garage, the officers had a right to be in the location from which the "plain view" was obtained. State v. DiBartolo, supra. These bills are without merit.
BILL OF EXCEPTIONS NO. 22
Counsel for defendant reserved this bill when the trial court allowed the prosecution, over defense objection, to recall one of the State's witnesses who had earlier testified. Defendant fails to show that this action prejudiced him in any way and the bill is totally without merit.
BILLS OF EXCEPTIONS NOS. 8, 9, 10, 11, 12, 14, 15, 16, 18, 25, 26 and 27.
These bills are grouped together since they relate to objections made to the trial court's admission of evidence of another crime (the Kilchrist murder) to prove intent to murder at the trial for the attempted murder of Beverly Marks.
Defendant's actions towards Mrs. Marks before the seizure of Miss Kilchrist would, standing alone, support no more than a charge of aggravated battery. However, the State had charged the more serious offense, attempted murder, and it became necessary for the prosecution to present evidence which would establish that the holding of the knife to the ribs of Mrs. Marks carried with it an intent to murder her. In order to prove the requisite intent, the prosecution sought to present, and was permitted to present, evidence of the murder of her coworker, Mona Kilchrist, to show that the battery upon Mrs. Marks was committed with the specific intent to kill or to inflict great bodily harm upon her.
Bills of Exceptions Nos. 8 and 9 were reserved when the trial court overruled objections to remarks made by the State during its opening statement that proof would be offered of the killing of Mona Kilchrist in order to prove that defendant intended *630 to kill or inflict great bodily harm upon Mrs. Marks.
Bills of Exceptions 10 and 11 were reserved when the trial court permitted the State to elicit testimony concerning conversation between the defendant and his hitch-hiker passenger, Patterson, about stopping "to get a girl" and about what transpired when the two stopped at another bar or lounge and unsuccessfully tried to procure female companionship.
Bill of Exceptions No. 12 was reserved when the State elicited conversation between the defendant and Patterson, which, according to the witness Patterson, began with defendant asking if Patterson wanted "to get a girl and rape her and cut her throat". Patterson testified he told the defendant he did not wish to do this, whereupon the defendant stated, "Well, I am going to get one and rape her and cut her throat myself".
Bill of Exceptions No. 15 was reserved when the trial court permitted Patterson to give a physical description of Miss Kilchristthat she was blond and appeared to be seventeen or eighteen years of age.
Bill of Exceptions No. 14 was reserved to objections made general and it encompasses numerous objections to testimony elicited from a number of witnesses. The bulk of the testimony had reference to the killing of Mona Kilchrist. The first evidence was Patterson's description of how the defendant forced Miss Kilchrist from the lounge into his car and drove away with her. When a deputy sheriff, called to investigate the finding of the body of Miss Kilchrist, was asked, "What did you do when you got to the scene, Sir?" he responded, "I made an investigation and I noticed a young girl lying flat on her face with numerous stab wounds * * *." Defense objections clearly went to the specificity of the detail of the witness's answer.
Bill of Exceptions No. 16 was reserved during the testimony of the coroner as to the cause of death of Miss Kilchrist. He first gave his opinion as to the cause of death, which was that death resulted from shock, due to internal hemorrhage from multiple stab wounds in the abdomen and back. The trial court would not permit the coroner to estimate the number of multiple stab wounds. The trial court did allow the coroner to state the general location of the wounds and he testified that the wounds were on the back, abdomen and neck. The coroner was asked if he made an autopsy and, after an affirmative response, he was asked to give the results of the autopsy. Defendant's counsel objected, arguing that the answer had already been stated, and the question was therefore repetitious. The objection was overruled and the doctor answered that the autopsy revealed "The cause of death was due to shock, due to hemorrhage, due to multiple stab wounds."
Bill of Exceptions No. 18 was reserved when Deputy Hebert of the Lafayette Sheriff's Department testified that at the scene he "* * * found a young white female lying flat on her face on the side of a rural road, it was a dirt road. Her body was covered with blood, her back had numerous stab wounds, she was lying in a pool of blood over a black dress."
Bills of Exceptions Nos. 25, 26 and 27 were reserved when the defendant was on cross-examination and the prosecution, in questioning the defendant, referred to "killing" Miss Kilchrist. When Deputy Hebert was called on rebuttal, the prosecution again referred to Mona Kilchrist as" the girl the defendant "killed".
R.S. 15:445 provides:
"In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction."
*631 R.S. 15:446 provides:
"When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged."
In recent decisions from this Court, we have restated that the proof of other offenses for the purpose of proving knowledge, intent and purpose under these provisions is an exception to the general rule that other offenses may not be used in evidence upon the trial of a defendant. In State v. Prieur, 277 So.2d 126 (La.1973), we said: "The probative value of evidence of unrelated offenses in relation to the charged offense should therefore be weighed in light of its possible prejudicial effect, its tendency to influence the triers of fact improperly as to the present guilt of the accused. See McCormick on Evidence, § 190 (Cleary Ed. 1972)."
In State v. Moore, 278 So.2d 781 (La. 1973), we said: "* * * There is always this second qualification to the admission of evidence of other offenses in a criminal prosecution: even if otherwise admissible, if the prejudicial effect outweighs the probative value of evidence of other offenses, such evidence should be excluded."
Undoubtedly, the fact that defendant seized, abducted, and subsequently killed Mona Kilchrist is very relevant to and highly probative of the fact that he intended to kill or seriously injure Beverly Marks when he placed the knife to her ribs and attempted to force her to leave the lounge with him. We are not faced here with proof of another crime removed in time or by circumstances from the one with which the defendant is presently charged. The two offenses occurred within less than one hour of each other. They involved the same weapon; they were almost one continuing offense except for victim, place and result. As noted earlier, in order to secure a conviction for the attempted murder of Beverly Marks, the prosecution bore the burden of proving beyond a reasonable doubt that this defendant had the requisite specific intent to support a conviction of attempted murder.
What transpired between the defendant and Beverly Marks was not in great dispute. Actually and indeed the central issue in the trial of this defendant was the question of what he intended when he thrust the knife against the body of Beverly Marks to force her to accompany him from the lounge. The evidence that Miss Kilchrist was killed and that this defendant was the killer of Miss Kilchrist was of the highest probative value in the prosecution of the case to establish the element of specific intent. Therefore, this evidence could only be rejected if the method of producing the evidence was immeasurably prejudicial to the jury's determination of an independent finding of defendant's guilt or innocence of the crime charged here.
We are of the opinion that the statements made by the defendant to the hitch-hiker, Patterson, and the recounting of the events which led them to the site of the present offense, were relevant to the issue of intent. We are further of the opinion that the testimony of the two deputies about their identification of the body and its position was relevant, as was the coroner's opinion of the cause of death. Very brief testimony was elicited from the deputies. The prosecution did not attempt to "over-kill" in its examination of the deputies, and they made only brief statements in relation to the finding of the body of Miss Kilchrist. The coroner first gave an opinion of the cause of death without foundation to support the opinion. The State then properly inquired as to the facts which gave rise to the opinion, i. e., the autopsy, and properly asked what the autopsy revealed. The examination and the answers of the coroner were not inflammatory *632 or gory. They were matter-of-fact statements, succinctly given.
The question in regard to the description of the girl was pertinent for the purpose of identification, for later a lock of hair from the body was matched with a lock of hair found in the defendant's car. The objections to the prosecution's use of the words "killing" and "killed" are not well founded. The defendant had pleaded guilty to manslaughter. Killing does not mean murder. It means only the taking of life. It is about the only word which could be used which had no prejudicial connotation beyond the fact that the life of Miss Kilchrist had been taken.
It is pertinent that a review of the record in this case shows that the hitch-hiker, Patterson, the victim, and another bar attendant testified to all the circumstances surrounding the attempted forcing of the victim from the lounge at knife-point; that only two deputies testified, and then only briefly, in any regard to the discovery and condition of the body of Miss Kilchrist; and that the coroner's testimony was brief and professionally delivered. Moreover, all of the other evidence in the record which does not form a part of these bills of exceptions had to do with the subsequent activity of the defendant, his arrest, his incarceration, his statements to police, his consent to search and the seizures which we have discussed under a previous bill. The bulk of the evidence was necessary to establish that the lifeless body of Miss Kilchrist resulted from an intentional killing by this defendant. Also, there is much testimony addressed to the defendant's plea of insanity at the time of the commission of the crime, and finally the testimony of the defendant himself.
This Court is very intent upon enforcing the rules of law under R.S. 15:445 and R.S. 15:446 as set forth in State v. Prieur and State v. Moore, supra. We fully expect the State to weigh carefully the probative value of even relevant and admissible evidence of other crimes against the prejudicial effect upon the jury. We expect the trial court to control the production of relevant evidence of probative value in a manner which will guard against an over-zealous presentation by the State designed primarily to prejudice the jury into a determination of guilt based upon the defendant's guilt of a crime for which he is not on trial. The evidence of other relevant admissible crimes must be of highly probative value and must not be merely repetitious or cumulative. This evidence cannot be overindulged in to depict bad character or propensity for bad behavior. We have carefully weighed the evidence as presented by the State of the killing of Miss Kilchrist and its probative value against the prejudicial effect the manner of presentation might have had on the jury, which prejudice might cause them to depart from a concentration on the attempted murder for which the defendant was charged, and thus cause them to convict solely upon the basis of the conduct evidenced by the other crime.
While admittedly much of the evidence in this record deals with the other offense, the State has not presented the evidence repetitiously, cumulatively, nor with subterfuge. This is not to say that the issue we have decided is clear cut, even in the case at hand. The balancing of the scales when weighing probative value against prejudicial effect often will turn upon the method of presentation of the evidence which is relevant. It is well to repeatthis case reinforces the Prieur and Moore decisions, for we have said here that even though relevant in time, place and circumstances, and wholly admissible as having probative value, if the evidence is improperly presented, it may become so prejudicial as to offset the probative value and to require reversal.
For the reasons assigned, the conviction and sentence are affirmed.
*633 SANDERS, C. J., concurs in the decree.
SUMMERS, J., concurs in the decree only and will assign reasons.
SUMMERS, Justice (concurring in the result).
I am not "intent upon enforcing the rules of law under R.S. 15:445 and R.S. 15:446 as set forth in State v. Prieur and State v. Moore...". To the contrary, I consider these decisions to be contrary to a long line of decisions of this Court applying and construing those statutes correctly. See my dissenting opinions in State v. Prieur, 277 So.2d 126 (La.1973) and State v. Moore, 278 So.2d 781 (La.1973). In my view the effect of the rule announced in State v. Prieur that "The probative value of evidence of unrelated offenses in relation to the charged offense should therefore be weighed in light of its possible prejudicial effect, its tendency to influence the triers of fact improperly as to the present guilt of the accused. See McCormick on Evidence, § 190 (Cleary Ed. 1972)." is to modify and amend the statutes.
Even if this rule announced in Prieur had merit, it has no application in Louisiana where a contrary rule is clearly established by statute. La.R.S. 15:445 and 446. The effect of the innovative rule announced in Prieur is to amend the statute to permit the judge almost unlimited discretion in applying or not applying the statutory rules. Its effect when considered along with the statute is to permit the judge to exclude the evidence of other crimes if the evidence is too convincing of guilt. Such a rule calls for a large measure of individual judgment about the relative gravity of imponderables and has little or no role in an orderly and responsible disposition of criminal cases.
I concur in the result.