290 So.2d 690 (1974)
STATE of Louisiana
v.
Aaron THOMAS.
No. 53986.
Supreme Court of Louisiana.
February 18, 1974.
*691 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Morgan J. Goudeau, III, Dist. Atty., Robert Brinkman, First Asst. Dist. Atty., for plaintiff-appellee.
John M. Shaw, Lewis & Lewis, Felix A. DeJean, III, Opelousas, for defendant-appellant.
MARCUS, Justice.
Aaron Thomas was convicted by a jury for the murder of Raymond D. Joubert and sentenced to life imprisonment. He reserved and perfected twelve bills of exceptions during the proceedings and thereafter appealed to this Court.
Bills of Exceptions Nos. 1, 2, 7, 8, 10 and 11 were not briefed and are, therefore, considered abandoned. State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972).
The State offered testimony relating to the discovery of the body of another victim who was murdered earlier on the same night as Raymond Joubert, as well as testimony regarding the identification of stab wounds on the body of the prior murder victim. Testimony relating to the facts and circumstances surrounding the prior murder was also presented. Over defendant's objections, the court allowed the testimony to be introduced. Bills of Exceptions Nos. 3, 4, 5 and 9 were reserved to these rulings.
Defendant urges that the trial court committed reversible error in allowing evidence to be introduced referring to another crime not related to the crime for which he was being tried. As a result, it is claimed that the trial was unfair and prejudicial to defendant, citing State v. Moore, 278 So.2d 781 (La.1973) and State v. Prieur, 277 So.2d 126 (La.1973).
We find no error in the rulings of the trial court for the reason that the evidence of the prior murder was admissible to show the system or modus operandi employed by the defendant. We herewith set forth the reasons for our conclusion.
The defendant, Aaron Thomas, and Shelton Batiste were indicted for the murder of Leo Doucet which occurred on February 3, 1970, a few hours before the Joubert murder. They were also indicted for Joubert's murder which occurred on the same date (February 3, 1970). Their joint trial for the Doucet crime was held on September 25, 1970 and resulted in a verdict of guilty.
At a later date, Batiste entered a plea of guilty to the murder of Joubert and was sentenced to life imprisonment. Trial of Aaron Thomas for the murder of Joubert was set. Prior thereto, the State served notice on the defendant that it intended to use evidence of similar or related crimes in the trial of this matter for the purposes of establishing knowledge, intent or system in the commission of the crime for which he now stands charged.[1]
According to the facts, Aaron Thomas, Shelton Batiste and a juvenile, Michael Leonce Jones, placed a call for a taxicab during the evening of February 2, 1970. Doucet responded to the call. He was robbed at gunpoint by Thomas and Batiste and taken in his cab to the parish dump in Opelousas where he was repeatedly stabbed to death with a knife. (Jones was allowed *692 to leave the cab during the commission of the murder.) The evidence revealed that multiple stab wounds had been inflicted on his neck and chest and that he died as a result of internal hemorrhaging.
A few hours later, Thomas and Batiste appeared at the Billups Service Station on East Vine Street in Opelousas. There they robbed Raymond Joubert, the attendant, took him at gunpoint in his automobile to a secluded spot on a road just outside of Opelousas, and killed him by repeated stabbing with the same butcher knife they had used to kill Doucet earlier that night. Evidence likewise indicated multiple stab wounds and death due to internal hemorrhaging.
Evidence of similar acts is admissible to show system, knowledge or intent under R.S. 15:445 and 15:446. We explained in State v. Spencer, 257 La. 672, 243 So.2d 793 (1971) that crimes of "system" are those acts and offenses which are of like nature and exhibit like methods or plans of operation. Spencer was a prosecution for armed robbery, and we held that the evidence as to another armed robbery was admissible since it followed the same modus operandi as the armed robbery charged and was related in time and location.
Likewise, in the recent case of State v. Grant and Dixon, No. 53,628 on the docket of this Court, decided October 29, 1973, we stated:
"Our jurisprudence is uniform in holding that evidence of other armed robberies is admissible where almost identical tactics are used to show the `system' or modus operandi employed by the defendant. [footnote omitted] See State v. Prieur, supra; State v. Carney, 260 La. 995, 257 So.2d 687 (1972); State v. Modelist, 260 La. 945, 257 So.2d 669 (1972); State v. Moore, supra; State v. Montegut, 257 La. 665, 243 So.2d 791 (1971); State v. Spencer, 257 La. 672, 243 So.2d 793 (1971)."
After relating the similarity of the two crimes, we concluded in the aforesaid case:
"We hold that due to the similarity in methods used in these two crimes, and the close connexity in both time and distance between the offenses, evidence of the attempt to rob George Shaffer was admissible in the prosecution of these defendants for the armed robbery of Benny Gibson in order to show `system' or modus operandi. La.R.S. 15:445, 446. We find that the evidence was relevant and that its probative value outweighed its potential for prejudice to the defendant."
In the instant case, the two crimes were similar in that the victims were robbed at gunpoint, taken to secluded spots in their own vehicles where they were stabbed repeatedly to death with the same knife. The bodies of both victims showed multiple stab wounds on the neck and chest, and the non-existence of bullet wounds. Both died of internal hemorrhaging. There was also evidence that, in the commission of both crimes, Thomas held the gun while Batiste did the stabbing. Both crimes were committed within a few hours of each other in the same locality.
Hence, we conclude that the evidence of the prior murder was admissible to show system or modus operandi. R.S. 15:445 and 15:446. Furthermore, we find the probative value of the evidence outweighs any prejudicial effects thereof.
Accordingly, there is no merit to Bills of Exceptions Nos. 3, 4, 5 and 9.
When the transcript of the testimony of Michael Leonce Jones, taken at the preliminary hearing, was introduced at trial, defendant objected. The objection was overruled, and Bill of Exceptions No. 6 was reserved.
The basis of the objection to the use of the testimony of Jones was that the State had every opportunity to obtain this witness for trial, that John M. Shaw, who had been recently appointed to represent defendant, was not counsel of record at the time this testimony was taken, and that *693 Shaw had no opportunity to cross-examine this State witness at the preliminary hearing.
It is submitted by defendant that Chief Deputy L. B. Carriere was only made aware of the problem of serving the subpoena on Michael Leonce Jones two days before the trial was to begin, that no effort was made by the district attorney's office or the sheriff's office to find Jones, and that, although the testimony indicates Jones was on probation at the time of the trial, no check was made with his probation officer to find out his exact whereabouts.
Under the provisions of Article 295 of the Code of Criminal Procedure:
"* * * The transcript of the testimony of any other witness who testified at the preliminary examination is admissible for any purpose in any subsequent proceeding in the case, on behalf of either party, if the court finds that the witness is dead, too ill to testify, absent from the state, or cannot be found, and that the absence of the witness was not procured by the party offering the testimony. * * *"
The record in this case establishes that Deputy Sheriff Ray Trahan received a subpoena for Jones On October 6, 1972 (seventeen days before trial) and began his search for Jones on that day. On three or four occasions, Sheriff Trahan attempted to serve the subpoena at the home of Jones' mother, without avail. The mother did not know where to locate him. One of Jones' probation officers was contacted by Trahan, and he was given an address in Luling. A telegraph message was sent to the sheriff's office there, without result. Deputy Sheriff L. B. Carriere, acting on information that Jones might be working on a plantation in St. John Parish, called the sheriff's office there and also called the owner of this plantation. He was informed that Jones never worked on the plantation. Robert Brinkman, assistant district attorney, requested the issuance of a subpoena for Jones during the early part of October. When it was brought to his attention that they were having difficulty locating him, he directed the officer to Jones' mother and the local probation officer.
There is no substance to the complaint of defendant that the district attorney's office, through the sheriff's office, failed to make a diligent effort to have Jones present for the trial. The facts of the record are to the contrary.
Nor do we find significant the fact that Mr. John M. Shaw was only recently appointed to represent the defendant and had no opportunity to cross-examine the State's witness at the preliminary hearing. At the preliminary hearing, defendant was represented by Mr. H. Garland Pavy and assisted by Mr. Felix DeJean III. The record reveals that both attorneys were present at the preliminary hearing. On June 30, 1972, Mr. John M. Shaw was appointed to represent defendant in place of Mr. H. Garland Pavy. At the trial on the merits, defendant was represented by both Mr. John M. Shaw and Mr. Felix DeJean III.
Accordingly, we conclude that a sufficient showing was made that, despite a bona fide and diligent search, Jones could not be found at the time of trial. Furthermore, adequate opportunity for cross-examination was afforded defendant at the preliminary examination. Thus, we find that the trial judge properly admitted into evidence the transcript of Jones' testimony taken at the preliminary hearing. State v. Nelson, 261 La. 153, 259 So.2d 46 (1972); State v. Jones, 261 La. 422, 259 So.2d 899 (1972).
Bill of Exceptions No. 6 is without merit.
Bill of Exceptions No. 12 was taken to the trial court's denial of a motion for mistrial when the State, in closing argument, allegedly referred to a statement from Shelton Batiste which was not in evidence.
*694 The brief filed in this Court also urges that this statement makes reference to another crime which was highly prejudicial to defendant.
As we view the matter, the statement made by the assistant district attorney in closing argument is substantiated by the record. Furthermore, any reference to another crime was proper under our rulings in Bill of Exceptions Nos. 3, 4, 5 and 9.
The trial judge correctly denied the motion for a mistrial.
For the reasons assigned, the conviction and sentence are affirmed.
BARHAM and DIXON, JJ., concur.
TATE, J., assigns additional concurring reasons.
TATE, Justice (concurring).
The defendant was tried October 23-25, 1972, prior to our decisions in State v. Moore, 278 So.2d 781 (La.1973) and State v. Prieur, 277 So.2d 126 (La.1973). Nevertheless, I believe the use of the other crime in this case is not in conflict with the holdings in these decisions.
As described by the majority opinion, two murders were committed the same evening. In each, the murderers employed the same modus operandi. The state had an eyewitness, an accomplice who turned state's evidence, to prove that the defendant Thomas and a confederate Batiste had killed Doucet, a taxi driver.[1] The defendant is here on trial for the killing of young Joubert, the service station attendant.
As to this present killing, the proof that the defendant participated is largely circumstantial. There are no eyewitnesses directly connecting the accused with the murder. Young Joubert was found murdered on a road outside Opelousas. His service station had been robbed. No witness directly connected Thomas and Batiste with this robbery and killing. Under these circumstances, and upon the further proof noted below, it became relevant and admissible to prove the modus operandi used by Thomas and Batiste in robbing and killing Doucet. Since this same system or modus operandi had resulted in young Joubert's death that night, the test may thus relevantly have tended to prove that Thomas and Batiste were young Joubert's killers too and, in the absence of other strong evidence connecting them with this second murder, its probative necessity outweighed its prejudicial effect.
Admissions to other people by Thomas and Batiste during later hours after Doucet's killing showed that, after separating from the state's witness to their participation in the Doucet murder, they had later returned and had stated they had killed another person, a young boy.[2] Thomas and Batiste described both killings as having Thomas hold the gun on the victim, while Batiste stabbed him to death. Furthermore, a bag of coins left by Thomas and Batiste with a witness was identified at the trial as a bag of coins stolen from Joubert's service station.
Thus, the evidence of the other (Doucet) crime was not used to prove bad character. Proof of system or modus operandi by use of other crimes may not be relevant to any issue in a prosecution, even if similar; or may be so peripherally relevant that the prejudicial effect outweighs its probative value. State v. Moore, 278 So.2d 781 (La. 1973). Here, however, the proof of system or modus operandi was a necessary element of the state's case, and the proof of the other crime was highly relevant to determining guilt or innocence of this crime. *695 Therefore, its probative value outweighed its prejudice.
I therefore believe this case illustrates a proper use of other-crime evidence.
The prosecutor's office in this case is also to be commended for giving pre-trial notice of its intent to use this type of evidence, even in advance of the Prieur guidelines. Also, for its care, in preparing a thorough prosecution case, without nevertheless including irrelevant testimony prejudicial to the right of the defendant to a fair trial, however brutal the murder with which he is charged.
NOTES
[1] State v. Prieur, supra, set forth specific safeguards with which the State must comply when it intends to offer evidence of other criminal offenses under R.S. 15:445 and 15:446. However, these provisions are only applicable to criminal cases tried after the finality of said judgment which was on March 26, 1973. The instant case was tried before that date on October 23, 24 and 25, 1972.
[1] In other proceedings, the defendant was convicted of his murder.
[2] The modus operandi testimony, for example, relevantly indicated that the young boy was the victim for whose killing Thomas is presently on trial, rather than anyone else.