408 So.2d 1349 (1982)
STATE of Louisiana
v.
Margaret Rachel GOZA.
No. 81-KA-1699.
Supreme Court of Louisiana.
January 25, 1982.
Rehearing Denied February 19, 1982.
*1350 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Shirley G. Wimberly, Abbott J. Reeves, Clarence E. McManus, Asst. Dist. Attys., for plaintiff-appellee.
Jay C. Zainey of McPherson & Zainey, New Orleans, for defendant-appellant.
DENNIS, Justice.[*]
When the prosecution intends to offer other crimes evidence to prove motive, is it required to furnish the defendant before *1351 trial a particularized statement of the other acts or offenses? We hold that it must. Evidence of offenses which are part of the res gestae, or convictions used to impeach defendant's testimony, are the only exceptions to the Prieur rules requiring the prosecution to give reasonable, particularized notice to the accused of any other crimes evidence it intends to offer.
Defendant, Margaret Rachel Goza, was convicted by a jury of first degree murder of her husband and sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. On appeal she relies upon eight assignments of error for reversal of her conviction and sentence. Finding reversible merit in the assignments relating to other crimes evidence we pretermit consideration of the other assignments.
The defendant's husband was shot and killed by an unidentified gunman. The defendant and her husband had gone to his office at 9:30 p. m. to make sure a space heater had been turned off. The defendant testified that an unidentified white man wearing a mask entered the office from an adjoining warehouse, said this is a holdup, and shot her husband. She ran out of the office and across the highway into a lounge. The assailant left without taking anything.
The theory of the prosecution's case was that the defendant had her husband killed to prevent him from informing the police of other crimes she had committed. The prosecution, however, did not give the defendant notice prior to trial of its intention to offer evidence of the other crimes to prove her motive. Nevertheless, the prosecution was permitted over the defendant's objections, to refer to and introduce evidence that defendant had embezzled from her husband's corporation and had involved his children by a prior marriage in illicit drug distribution.
In his opening statement to the jury the prosecuting attorney, in pertinent part, said:
"Mrs. Goza and the other partner [Mr. Spicuzza] embezzled several hundred thousand dollars out of the business. The evidence I think will be clear to you as the case proceeds. Now Mr. Goza had no knowledge of this, the deceased, Mr. Kenneth Goza.
"Also Mrs. Goza and the other partner were trafficing narcotics.
* * * * * *
"Mrs. Goza was using the children of Mr. Goza, his children of a first marriage without his knowledge to buy and sell the narcotics. We will bring this out. We will have evidence to this during trial.
"Now why is this important? Why did the State bring out the embezzlement and narcotics? Because the State is going to show, I hope to your satisfaction, that Mr. Goza after he gained knowledge of this, the embezzlement, the narcotics and that his children were involved in this narcotic traffic, involved by the defendant, he was going to the police with information. He was going to blow the whistle on them. And he was going to close down the business. The State is going to bring this out to show the motive of this individual and the killing of her husband."
The accountant for the husband's corporation testified that from 1977 to 1979 approximately seventy checks for unusually large amounts were issued to private individuals from corporate funds and posted as payments to subcontractors or for inventory. The corporation's accountant and another accountant selected by the state testified that these transactions were unusual and inconsistent with purchases of inventory or other normal business operations. The corporate accountant said that Mrs. Goza had explained to him that the payments were payoffs made in hopes of gaining future business. The defense argues *1352 that the payments do not represent embezzlement and points out that approximately sixty of the seventy checks were signed by the victim either alone or with their partner, Mr. Spicuzza. Only eight were signed by Mrs. Goza together with Mr. Spicuzza, and none were signed by Mrs. Goza alone.
The defendant's stepson, Mark Goza, testified that he had sold cocaine and quaaludes at the request of Mrs. Goza who supplied the drugs to him approximately seven or eight months before his father's death. Vicki Goza, defendant's stepdaughter, testified that one year before her father's death she was sent to Miami, Florida by Mrs. Goza and Mr. Spicuzza to buy one hundred pounds of marijuana and an ounce of cocaine, and that after completing the purchase she brought the drugs back to New Orleans to Mrs. Goza and Mr. Spicuzza. Both Mark and Vicki stated that their father was extremely angry and upset when he eventually became aware of their involvement in the transactions.
The prosecution within a reasonable time before trial must furnish in writing to the defendant a particularized statement of the other acts or offenses it intends to offer specifying the exception to the general exclusionary rule upon which it relies for their admissibility. State v. Prieur, 277 So.2d 126, 130 (La.1973);[1]State v. Vernon, 385 So.2d 200 (La.1980); State v. Hatcher, 372 So.2d 1024 (La.1979); State v. Morris, 362 So.2d 1379 (La.1978); State v. Jones, 332 So.2d 466 (La.1976); State v. Price, 325 So.2d 780 (La.1975); State v. Ghoram, 290 So.2d 850, appeal after remand, 328 So.2d 91 (La.1974). In the present case, the prosecution acknowledges the existence of this rule and admits that it did not give notice. The prosecution argues, however, that it is excused from this obligation when the other crimes evidence is offered to prove motive. The prosecution is in error.
The only exception to the requirement of notice of intent to use other crimes evidence is as to evidence of offenses which are part of the res gestae, or convictions used to impeach defendant's testimony. State v. Prieur, supra; see State v. Williams, 375 So.2d 364 (La.1979); State v. Molinario, 383 So.2d 345 (La.1980), cert. denied 449 U.S. 882, 101 S.Ct. 232, 66 L.Ed.2d 106 (1980); State v. Boyd, 359 So.2d 931 (La.1978); State v. Brown, 340 So.2d 1306 (La.1976); State v. Flowers, 337 So.2d 469 (La.1976); State v. Mays, 315 So.2d 766 (La.1975); State v. Richmond, 278 So.2d 17 (La.1973). The reason no notice is required as to res gestae evidence is that for evidence of the other crime to so qualify, the other crime must be so closely connected that the indictment or information as to the instant crime is deemed to carry with it notice as to the other crimes as well. State v. Schwartz, 354 So.2d 1332, 1334 (La.1978); *1353 Pugh, The Work of the Louisiana Appellate Courts for the 1973-1974 TermEvidence, 35 La.L.Rev. 259, 525 (1974). No additional notice requirement is deemed necessary as to convictions offered for the purpose of impeaching the credibility of a defendant because of the other "zealously placed safeguards" surrounding its introduction. State v. Prieur, 277 So.2d at 130; La.R.S. 15:495; see also La.C.Cr.P. art. 717 (added by Acts 1977, No. 515).
There is no reason to create an exception to the notice requirement with respect to other crimes evidence offered to prove motive. The introduction of other crimes evidence involves constitutional problems because of the danger that a defendant may be tried for charges of which he has no notice and for which he is unprepared and which unfairly prejudice him in the eyes of the jury. See State v. Prieur, supra, at 128, 130; State v. Vernon, 385 So.2d 200 (La.1980); State v. Ambercrombie, 375 So.2d 1170 (La.1979). State v. Frederick, 340 So.2d 1353 (La.1976); State v. Brown, 318 So.2d 24 (La.1975). We first recognized the need to formulate safeguards against such a denial of due process when other crimes evidence is used to prove knowledge, system or intent. State v. Prieur, supra. It is self evident, however, that the same danger is prevalent when other crimes evidence is used for any other purpose.
The attorney for the state erroneously contended in oral argument that this court in State v. Abercrombie, supra, created an exception to the Prieur notice requirement for evidence used to prove motive. He relied on our statement that "[m]otive is generally recognized as an independent basis of relevancy." Id. at p. 8. This statement, however, is merely a reference to the generally recognized principle that the admissibility of defendant's other crimes depends on the independent relevancy of the evidence to some material issue other than defendant's character.[2] McCormick, § 190, at 447; 2 Wigmore, § 217; Jones, Other Crimes Evidence in Louisiana, 33 La.L.Rev. 614 (1973); See, e.g., State v. Moore, 278 So.2d 781 (La.1973); State v. Grant, 295 So.2d 168 (La.1973); State v. Sutfield, 354 So.2d 1334 (La.1978). The prosecution's duty to give the defendant reasonable particularized notice of its intent to use other crimes evidence is separate and independent of the question of the admissibility of the evidence.[3] See State v. Walker, supra; State v. Vernon, supra. Even if the evidence is ultimately admissible, the defendant is entitled as a matter of fairness to notice of the particular offenses which the state intends to prove and to an opportunity to prepare any defense he may have against them.
The defendant was severely prejudiced by the prosecution's failure to give notice of its intention to use the devastating other crimes evidence. There was nothing else but inconclusive circumstantial evidence to link her with the killing of her husband. Since the case against her consisted essentially of the evidence of other offenses, she was in truth tried on charges *1354 of which she was given no notice and for which she was unprepared. The defendant's conviction and sentence must be reversed. Consequently, it is unnecessary for us to decide the other serious issues defendant raises, i.e., whether the evidence introduced at trial clearly and convincingly proves that she committed the other crime of embezzlement; and, even if the evidence at trial that defendant distributed drugs now seems clear and convincing, would the defendant in a fair hearing after reasonable notice be able to demonstrate sufficient doubt in the proof to render this other crime evidence inadmissible? We will not set forth our views on either of these questions at this time, since we cannot predict what new or additional evidence either side may educe in the pretrial hearing.
For the reasons assigned, the defendant's conviction and sentence are reversed and the case is remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
LEMMON, Justice, concurring in denial of rehearing.
While failure to give the Prieur notice can be harmless error, it was reversible error under the facts of this case.
NOTES
[*] The Honorables O. E. Price, Fred W. Jones, Jr. of the Court of Appeal, Second Circuit, and John C. Boutall of the Court of Appeal, Fourth Circuit participated in this decision as Associate Justices pro tempore, joined by Associate Justices Calogero, Marcus, Dennis and Watson.
[1] In State v. Prieur, supra, this Court outlined the following general procedural safeguards to be followed when the state intends to offer evidence of other criminal offenses under La. R.S. 15:445 and 446:

"(1) The State shall within a reasonable time before trial furnish in writing to the defendant a statement of the acts or offenses it intends to offer, describing same with the general particularity required of an indictment or information. No such notice is required as to evidence of offenses which are a part of the res gestae, or convictions used to impeach defendant's testimony.
"(2) In the written statement the State shall specify the exception to the general exclusionary rule upon which it relies for the admissibility of the evidence of other acts or offenses.
"(3) Prerequisite to the admissibility of the evidence is a showing by the State that the evidence of other crimes is not a subterfuge for depicting the defendant's bad character or his propensity for bad behavior, and that it serves the actual purpose for which it is offered.
"(4) When the evidence is admitted before the jury, the court, if requested by defense counsel, shall charge the jury as to the limited purpose for which the evidence is received and is to be considered.
"(5) Moreover, the final charge to the jury shall contain a charge of the limited purpose for which the evidence was received, and the court shall at this time advise the jury that the defendant cannot be convicted for any charge other than the one named in the indictment or one responsive thereto."
[2] Moreover, independent relevancy is only one of the considerations in deciding whether a particular item of other crimes evidence is admissible. Even if it is relevant, because the evidence of other offenses is so strongly prejudicial, the greatest care must be taken to reject the evidence, unless it is plainly necessary to prove something which is genuinely at issue, there is clear and convincing proof of defendant's commission of the other crime, and the probative value of the other crimes evidence outweighs its prejudicial effect. State v. Sutfield, 354 So.2d 1334 (La.1978); State v. Moore, supra; State v. Walker, 394 So.2d 1181, 1185 (La.1981); State v. Vernon, supra.
[3] The Prieur procedures must be followed regardless of whether the other crimes evidence is ultimately admissible. This is clear from the Prieur opinion's statement of the procedures and from the court's explicit requirement that the new safeguards be applied in pretrial of the case although some of the other crimes evidence "may well be properly admissible as systems evidence." 277 So.2d at 129.