664 So.2d 665 (1995)
STATE of Louisiana, Appellee,
v.
Dalton M. BAILEY, Defendant-Appellant.
No. 95-78.
Court of Appeal of Louisiana, Third Circuit.
November 2, 1995.
Rehearing Denied February 6, 1996.
*668 David Wayne Burton, De Ridder, for State of Louisiana.
Thomas L. Lorenzi, Walter Marshall Sanchez, Lake Charles, for Dalton M. Bailey.
Before DOUCET, C.J., and AMY and SULLIVAN, Judges.
AMY, Judge.
Defendant, Dalton M. Bailey, appeals his second degree murder conviction. For the following reasons, defendant's conviction is affirmed.

DISCUSSION OF THE RECORD
On July 23, 1993, defendant shot his wife, Dana Bailey, in the forehead with a Marlin.22 semiautomatic rifle. A few hours later, the victim died in Beauregard Memorial Hospital as a result of the head wound. On August 25, 1993, defendant was charged by grand jury indictment with the Second degree murder of his wife in violation of La. R.S. 14:30.1. On March 11, 1994, the defendant pled not guilty. After trial by jury, the defendant was found guilty of Second degree murder on September 15, 1994. After defendant was sentenced on September 30, 1994, to life imprisonment without benefit of parole, probation, or suspension of sentence, he timely perfected this appeal and asserts the following assignments of error:
(1) The ruling of the trial court prohibiting voir dire regarding the elements of negligent homicide in a prosecution charging second degree murder was reversible error as it infringed on the defendant's right to full voir dire examination under Article 1, Section 17, Louisiana Constitution of 1974 and such error was not cured by restriction of voir dire to the permitted inquiry regarding the elements constituting criminal negligence.
(2) The trial court committed reversible error in overruling defendant's objection and in denying defendant's motion for mistrial upon Deputy Slover testifying that the defendant said, "He had been arrested before," and that the deputies would blame him.
(3) The trial court committed reversible error in permitting the introduction into evidence of photographs of marijuana at the crime scene and evidence of intended distribution of marijuana by the defendant on an in limine motion of the State seeking introduction of evidence of other crimes *669 pursuant to Louisiana Code of Evidence Article 404(B).
(4) The trial court committed reversible error in permitting hearsay testimony regarding the existence of photographs of the victim depicting "prior beatings" under Louisiana Code of Evidence Article 404(B) as the introduction of evidence of other crimes denied defendant the right to a fair trial, especially where a search of the premises failed to produce any physical proof of the actual existence of the photographs regarding which such testimony was permitted.
(5) It was reversible error for the trial court to overrule defendant's objections to the hearsay statement by Dayna Lacy that the minor child of the victim and defendant said: "Turn around Mama and maybe he won't shoot you[.];" further, it was reversible error to rule that the prejudice of such remark did not outweigh its relevancy.
(6) Defendant was denied a fair trial by the trial court's denial of defendant's objection to the testimony of Dayna Lacy that the defendant threatened to kill her if she did not say that the shooting was an accident, which testimony constitutes evidence of the commission of another crime.
(7) It was reversible error for the trial court to deny defendant's objection to the introduction of the written statement of defendant, or redaction of the statement, with reference to inclusion within the statement of evidence of other crimes or bad acts directed toward the victim and narcotics.
(8) In announcing to the jury after the State had rested: "We shall now proceed with the defendant's case," the trial court committed reversible error in commenting upon the failure of the defendant to produce evidence despite the State's burden of proof, where the State had called the witnesses announced by defendant for sequestration, the defendant was not called to testify and the defense was forced to announce in response that it rested.
(9) Reversible error resulted from the denial by the trial court of defendant's motion for mistrial for a comment on the failure of the defendant to testify in his own defense where the court announced to the jury upon the State having rested: "We shall now proceed with the defendant's case[.]," in response to which defendant was compelled to announce that it rested without calling the defendant to testify in his own defense and where the witnesses he had announced for purposes of sequestration had been called to testify by the State.
(10) It was reversible error for the trial court to reject defendant's request for a special instruction on the elements of negligent homicide and that it is not a responsive verdict to a charge of second degree murder where the requested charge was a correct statement of the law and the instruction, as given by the court, only defined criminal negligence with reference to the essential element of specific intent or general intent but without the contextual relationship to the crime of negligent homicide.
(11) The admissible evidence is insufficient, when viewed in the light most favorable to the prosecution, to sustain a verdict of guilty of second degree murder beyond a reasonable doubt.

SUFFICIENCY OF THE EVIDENCE
By the eleventh assignment of error, the defendant contends that the evidence was insufficient, when viewed in the light most favorable to the prosecution, to sustain a verdict of guilty of second degree murder beyond a reasonable doubt. Specifically, the defendant contends that the State failed to prove beyond a reasonable doubt that he possessed the requisite specific intent because he argues that the shooting which resulted in his wife's death was accidental.
The record establishes that on the day of the victim's death, the defendant was anticipating an exchange of drugs with Larry Basco. Dayna Lacy, who was called as a prosecution witness, testified that she was present at the defendant's residence with the defendant's cousin, who was her boyfriend at the time, Charles Austin, on the day of the shooting and testified about the incidents leading up to the victim's death. Ms. Lacy testified that when the victim told the defendant *670 about a telephone call from Basco that he had missed, the defendant told her "to get her fucking ass back into the house and that if he called again to make sure that he was told or else she would pay for it later." Ms. Lacy stated that the victim answered another telephone call from Basco, but did not immediately tell the defendant about the call. When the victim later told the defendant about Basco's call, Ms. Lacy stated that the defendant became angry and started cursing and screaming at the victim. Ms. Lacy testified that the defendant showed her pictures of his wife after he had beaten her, pushed the victim and the chair in which she was sitting to the floor, and walked over to the gun rack to retrieve a big knife. Ms. Lacy testified that the victim was still lying on the floor when the defendant threw the knife at her and missed her by "about an inch and a half." Ms. Lacy further testified that when the victim asked the defendant if he was trying to kill her that he replied: "Today seems like a good day to die."
Next, the defendant walked over to the gun rack and loaded a .22 rifle outfitted with a scope. Ms. Lacy testified that at this point, the victim got up and started mixing peas at the sink with her back toward the defendant. The defendant hollered for the victim to turn around, but she did not. Ms. Lacy stated the defendant began shooting around the victim, but that she did not turn around. She testified that Clifton Bailey, the son of the victim and defendant, told his mother: "Turn around, mama, and maybe he won't shoot you." When the victim turned around, the defendant shot her in the forehead. Ms. Lacy testified that she counted a total of nine shots and immediately prior to the last shot being fired, the defendant told his victim, "Turn around and look at the man that's going to send you to your mother-fucking maker."
The testimony of defendant's cousin, Charles Austin, corroborated Ms. Lacy's testimony. He testified that he was present at defendant's home the day the victim was shot and that the defendant and victim had a disagreement over the fact that she was not inside waiting on a phone call. Mr. Austin testified that he was outside working on defendant's four-wheeler when he heard five (5) or six (6) shots of rapid fire. Mr. Austin further testified that he heard the defendant state: "Turn around and look at the man that's sending you to meet your mother-fucking maker." Mr. Austin stated that he then "heard the rifle go `kawhop,' heard, `blunk,' and she [the victim] hit the floor." Mr. Austin testified that Ms. Lacy came running out the door screaming that "he shot her, he's killed her, she's dead."
When asked at trial about the rifle which killed the victim, Mr. Austin testified that he had used it a week earlier and that it "was very accurate when the scope's set right" and that he would assume that it was accurate the day the victim was shot.
After the shooting, defendant called the sheriff's office for an ambulance. Wesley Slover, the deputy who received defendant's call, testified that defendant was screaming and that defendant advised him that he and his wife were struggling over a .22 caliber gun, and it went off, shooting her in the head. He also stated that the defendant told him that "he had been arrested before and that the deputies were going to blame him for the shooting."
Kelly Kraft and Glen Mears were Beauregard Parish Sheriff's Department deputies who responded to defendant's call. Deputy Kraft stated that when he arrived at defendant's residence, he found the defendant kneeling down beside his wife, with his left hand on her forehead, apparently applying pressure to her wound, and dipping blood and fluid out of her mouth with a spoon. Deputy Kraft further testified that defendant stated that the victim was in the kitchen and he was in the living room when she was shot. Deputy Mears testified that inside the defendant's home, he located the following: six (6).22 caliber spent casings; three live rounds; the weapon, a .22 caliber rifle on the gun rack; a knife stuck in the "cabinet door just above the location of where Mrs. Bailey's head was when she was laying on the floor"; and several bullet holes.
Some evidence was introduced at trial to establish that the shooting was accidental. Ms. Lacy stated that she told the sheriff's office and the defendant's mother that the *671 shooting was an accident shortly after the incident. However, she testified at trial that the defendant told her to say that the shooting was an accident or that he would kill her. When Mr. Austin spoke with the sheriff's department over the phone seeking emergency help for the victim immediately following the shooting, he told the police officer that there had been an accidental shooting. When questioned about this at trial, Mr. Austin explained: "The man ... shot his wife. For all I know, he might turn around to shoot me." At the crime scene, Mr. Austin also told the investigating officer that the rifle's scope was "way off." He explained at trial that he assumed that he stated that the scope was "way off" because the defendant was "an expert shot" and that he did not believe at the time of the homicide that the defendant had actually intended to shoot his wife and further, that he did not want to be involved in this incident.
John Yerby, a deputy with the Beauregard Parish Sheriff's Department, testified that when he took the gun off the gun rack, he noticed that it was loose and it wiggled. Ms. Lacy testified that after the defendant shot the victim he threw the gun to the floor and then told his son, Clifton, to put the gun on the gun rack, and Clifton complied.
Tom Harless, self-employed in the forensic field of firearms, handwriting and fingerprints, and accepted by the court as an expert, testified that when he received the weapon used in the instant case the scope was loose on the front mount. Mr. Harless testified that sighting through the scope, "the shots grouped seven and a half inches low or below the point of aim, and one inch to the right of the point of aim." Mr. Harless further testified that the test shots were all fired at a 21 foot distance since that was the distance given to him by the sheriff's office. According to Mr. Harless, the scope was not in focus at any magnification. He also stated that if the scope was on three power magnification, a person looking through the scope could actually see where the projectile would hit. On six power, Mr. Harless stated, the projectile would still hit within the shooter's field of view. On nine power, however, the projectile would hit outside the shooter's field of view. Mr. Harless stated that if a rifle is seven and a half (7½) inches low at 21 feet, it is off tremendously. However, Mr. Harless also testified that it was common practice not to use the scope at a range of 21 feet.
Terry Welke, Chief Deputy Coroner with the Calcasieu Parish Coroner's Office, testified that he performed the autopsy on the victim and that the gun shot wound was located two and a half (2½) inches below the top of her head, and three-fourths (3/4) inches to the right of the anterior mid-line, "which is essentially the line that runs down the center of the nose."
Finally, Mr. Ronnie Cooley, a deputy who responded to the defendant's home after the shooting, testified that when he told defendant his wife died, defendant replied, "If I meant to kill her, I could have. I am a crack shot. I can strike a match at a hundred yards," and pointed out the window.
When the issue of sufficiency of evidence is raised on appeal, the reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have determined that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La. 1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981).
In the case sub judice, defendant was convicted of second degree murder, in violation of La.R.S. 14:30.1(A)(1), which provides that "[s]econd degree murder is the killing of a human being ... [w]hen the offender has a specific intent to kill or to inflict great bodily harm." Specific criminal intent is that "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1).
Since specific criminal intent is a state of mind, it may be inferred from the circumstances present in a case and the actions of a defendant in discharging a firearm. *672 State v. Hongo, 625 So.2d 610 (La.App. 3 Cir.1993), writ denied, 93-2774 (La. 1/13/94); 631 So.2d 1163; State v. Thorne, 93-859 (La. App. 5 Cir. 2/23/94); 633 So.2d 773. Also, specific intent may be established by direct evidence, including the statements of the defendant. State v. Dixon, 620 So.2d 904 (La. App. 1 Cir.1993); State v. Navarre, 498 So.2d 249 (La.App. 1 Cir.1986).
When there is conflicting testimony, it is the role of the fact-finder, rather than the appellate court, to weigh the respective credibility of the witnesses. Accordingly, an appellate court should not second-guess the credibility determinations of the trier of fact beyond the sufficiency of the evidence review. Graffagnino, 436 So.2d 559. Since only irrational decisions to convict will be overturned, the conviction will be upheld if the interpretation of the evidence most favorable to the State is sufficient to establish all of the essential elements of the crime beyond a reasonable doubt. State v. Mussall, 523 So.2d 1305 (La.1988).
Although there was some evidence of an accidental shooting, there was ample evidence indicating defendant specifically intended to kill his wife or inflict great bodily harm from his words and actions at the time of the offense, including that he told the victim when the victim asked the defendant if he was trying to kill her that "Today seems like a good day to die"; that he told his victim "Turn around and look at the man that's going to send you to your mother-fucking maker" immediately before shooting her in the forehead; and that he shot her in the middle of her forehead. Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to find defendant guilty of second degree murder. Accordingly, the eleventh assignment of error lacks merit.

REQUESTED NEGLIGENT HOMICIDE JURY INSTRUCTION
The defendant requested a special charge to the jury defining negligent homicide and stating that negligent homicide is not a responsive verdict to the crime charged, which the trial court refused. By assignment of error, the defendant contends that this refusal constituted reversible error.
La.Code Crim.P. art. 802 requires the trial court to charge the jury on the applicable law in the case. Pursuant to La.Code Crim.P. art. 807, "[a] requested special charge shall be given by the trial court if it does not require qualification, limitation, or explanation, if it is wholly correct and pertinent." Accordingly, it is the duty of the trial court, when properly requested, to charge the jury about the applicable law in every phase of the case, including any theory of defense which the jury could reasonably infer from the evidence. State v. Smith, 414 So.2d 1237 (La.1982); State v. Marse, 365 So.2d 1319 (La.1978).
When there is no evidence or testimony to support a finding that a homicide occurred as a result of criminal negligence, a trial court does not err in refusing to give a requested instruction on negligent homicide. State v. Vergo, 594 So.2d 1360 (La.App. 2 Cir.), writ denied, 598 So.2d 373 (La.1992). But, as discussed above, there was some evidence of an accidental shooting introduced at trial. Since under the evidence presented it was possible for the jury to reasonably infer the defendant committed negligent homicide and the requested instruction was a correct and pertinent statement of the law and requiring no explanation or qualification, the trial court erred in refusing to give the requested definition.
Nevertheless, the refusal to give a requested jury charge does not constitute reversible error unless it prejudices the defendant's substantial rights. La.Code Crim.P. art. 921; Marse, 365 So.2d 1319; State v. Beck, 445 So.2d 470 (La.App. 2 Cir.), writ denied, 446 So.2d 315 (La.1984). Although the instructions given by the court did not make specific reference to the crime of negligent homicide, the instructions defined criminal negligence and further instructed the jury to find defendant not guilty of second degree murder and of manslaughter if they found defendant was merely negligent. This instruction sufficiently advised the jury that if they found that defendant did not have the intent necessary to convict him of second degree murder or manslaughter, *673 they must acquit him of these charges. The Louisiana Supreme Court in Marse, 365 So.2d at 1324, determined that the omission of a requested jury instruction on negligent homicide "could have been prejudicial only if the jury had insufficient information to understand that if ... [the defendant] was guilty only of negligent homicide it should find him not guilty of the charged offense." Accordingly, we conclude that there has been no miscarriage of justice or substantial prejudice to the defendant and that the trial court's failure to give this instruction did not constitute reversible error.
For the foregoing reasons, the tenth assignment of error lacks merit.

LIMITATION ON VOIR DIRE EXAMINATION
Defendant's first assignment of error alleges the trial court erred in disallowing questions concerning negligent homicide during voir dire examination. Specifically, defendant claims:
The ruling of the trial court prohibiting voir dire regarding the elements of negligent homicide in a prosecution charging second degree murder was reversible error as it infringed on the defendant's right to full voir dire examination under Article 1, Section 17, Louisiana Constitution of 1974 and such error was not cured by restriction of voir dire to the permitted inquiry regarding the elements constituting criminal negligence.
La. Const. art. 1, § 17 guarantees that "[t]he accused shall have a right to full voir dire examination of prospective jurors and to challenge jurors peremptorily." La. Code Crim.P. art. 786 provides that "[t]he scope of the voir dire examination shall be within the discretion of the court." Thus, even though a trial court is vested with wide discretion to restrict voir dire, he must grant wide latitude to the defendant's attorney to preserve the accused's right to full voir dire. State v. Hall, 616 So.2d 664 (La.1993).
To preserve a defendant's right to full voir dire, the trial court should allow him to ask non-repetitious voir dire questions which reasonably explore the potential jurors' prejudices and misunderstandings relevant to the central issues in the case. State v. Jackson, 450 So.2d 621 (La.1984); State v. Allen, 633 So.2d 325 (La.App. 1 Cir.1993). In the case before us, the defendant sought to question the prospective jurors about the offense of negligent homicide. The jury could only return a guilty verdict if defendant possessed the specific intent to kill or inflict great bodily harm. Accordingly, if the jury concluded that the defendant had only committed negligent homicide, it would have to return a not guilty verdict. For these reasons, the question that the defendant sought to ask about negligent homicide was relevant to central issues in the case and should have been allowed by the trial court. Nevertheless, since a trial court is accorded wide discretion in determining whether particular questions are essential to a full voir dire, disallowance of one relevant question does not automatically constitute reversible error. Jackson, supra; Allen, supra. In determining whether the trial court impermissibly infringed on the defendant's right to a full voir dire, an appellate court will review and consider the record of the voir dire as a whole to determine if defendant was given sufficient latitude. Hall, supra; Jackson, supra; Allen, supra.
Although the trial court in the case sub judice did not allow defendant to question jurors regarding the offense of negligent homicide, the trial court did allow defendant to question the jurors regarding criminal negligence. Based on the voir dire as a whole, we conclude the trial court did not commit reversible error in disallowing defense counsel to question jurors regarding negligent homicide. Furthermore, the instructions given the jury regarding criminal negligence and the trial judge's allowance of defense counsel to question jurors regarding criminal negligence, sufficiently advised jurors that if they found defendant did not possess the intent necessary to convict him of second degree murder or manslaughter, they must find him not guilty.
Accordingly, the first assignment of error lacks merit.

*674 DENIAL OF MOTION FOR MISTRIAL
When Deputy Slover was examined at trial regarding statements made by the defendant during his call for help after the victim was shot, Deputy Slover testified that defendant "advised that he had been arrested before and that the deputies were going to blame him for the shooting." The defense immediately objected to the testimony, arguing that Deputy Slover's testimony involved prior arrests, which were inadmissible, and moved for a mistrial. The trial court determined that the statement was not hearsay and was "clearly relevant" because it involved defendant's motive and intent. The trial court stated that he recognized that the statement was prejudicial, but did not consider it to be "unduly prejudicial." The trial court overruled the objection and denied the motion for a mistrial.
Under La.Code Crim.P. art. 770, a mistrial is mandatory upon timely motion of the defendant when a remark or comment made within the jury's hearing by "the judge, district attorney, or a court official" is a direct or indirect reference to "another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible." A police officer is not a court official; therefore, the mandatory mistrial mandated by Article 770(2) is not applicable. State v. Watson, 449 So.2d 1321 (La.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985); State v. Henry, 461 So.2d 484 (La.App. 3 Cir.), writ denied, 464 So.2d 313 (La.1984). However, a discretionary mistrial is appropriate under La.Code Crim.P. art. 771, where the witness is a police officer and the inadmissible other crimes evidence is elicited or should have been anticipated by the prosecutor. State v. Waymire, 504 So.2d 953 (La.App. 1 Cir. 1987). To determine whether a discretionary mistrial was warranted in this case, we must first consider whether the trial court erred in concluding that Deputy Slover's testimony about defendant's prior arrests was admissible.
Under La.Code Evid. art. 801(D)(2), a statement is not hearsay if it "is offered against a party and is: (a) [h]is own statement, in either his individual or a representative capacity." Since the statement was made by defendant and was offered against him, we conclude that the trial court correctly determined that defendant's statement was not hearsay. Under La.Code Evid. art. 401, "`relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." According to La.Code Evid. art. 404(B), "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident." Finally, under La. Code Evid. Art. 403, relevant evidence may be excluded by the trial court "if its probative value is substantially outweighed by the danger of unfair prejudice."
The trial court correctly determined that the statement in this case was relevant under Article 401 because it tended to prove that the defendant had a guilty mind when he talked to Deputy Glover and because evidence on the issue of whether a defendant possessed the specific intent to kill or inflict great bodily harm on his victim is relevant evidence in a second degree murder prosecution. State v. Bourque, 622 So.2d 198 (La. 1993).
In State v. Jackson, 625 So.2d 146, 148 (La.1993), the Louisiana Supreme Court stated: "Generally, evidence of other acts of misconduct is not admissible ... One exception is when the evidence tends to prove a material issue and has independent relevance other than showing that the defendant is a man of bad character." In the case before us, the defendant's statement about his previous arrests has independent relevance other than to prove the defendant's character. It was independently relevant on the issue of defendant's guilt following the shooting and whether he possessed specific intent, an element of second degree murder, in shooting his wife. Accordingly, we conclude that the trial court correctly determined that the defendant's statement was not inadmissible *675 character evidence excluded by Article 404(B), because it was not offered to establish that defendant acted in conformity with prior bad acts.
Under Rule 403, the trial court is vested with great discretion in determining whether the probative value of a relevant piece of evidence is substantially outweighed by the danger of unfair prejudice. Nigreville v. Federated Rural Elec. Ins., Co., 93-1202 (La.App. 3 Cir. 7/13/94); 642 So.2d 216, writ denied, 94-2803 (La. 1/27/95); 649 So.2d 384. No details were introduced concerning the nature of the defendant's arrests and the State did not pursue the matter any further. Accordingly, we conclude that the trial court did not abuse its discretion in determining that the prejudice of defendant's statement did not substantially outweigh its probative value.
For the foregoing reasons, we conclude that the second assignment of error lacks merit.

EVIDENCE OF MARIJUANA
By this assignment of error, the defendant argues that the trial court committed reversible error in permitting the introduction of photographs of marijuana at the crime scene. Defendant also contends the trial court erred in denying his motion in limine in which he sought to prevent the State from introducing evidence of other crimes pursuant to Louisiana Code of Evidence Article 404(B).
At trial, Dayna Lacy testified that she observed the defendant in his kitchen on the day of the murder bagging marijuana. She also testified about the disagreement that arose between the defendant and his wife about her not telling him about the telephone call from Larry Basco. She testified that the victim had told her that the defendant was expecting to exchange marijuana for cocaine on the day of the victim's death. The trial court also allowed photographs of marijuana found at the crime scene to be admitted.
As a general rule, evidence of other uncharged crimes is inadmissible in the guilt phase of a criminal trial because of the risk of undue prejudice or that the jury will convict the defendant due to his character, rather than the evidence of the present offense. State v. Code, 627 So.2d 1373 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994); La.Code Evid. art. 404(B). However, other crimes evidence is admissible when "it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it. In such cases, the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. The concomitant other crimes do not affect the accused's character, because they were done, if at all, as parts of a whole; therefore, the trier of fact will attribute all of the criminal conduct to the defendant or none of it." State v. Brewington, 601 So.2d 656, 657 (La.1992). (citations omitted).
The fact that defendant became angry with his wife because she did not tell him of a phone call he received from a person to whom the defendant planned to distribute marijuana was relevant to show the progression of defendant's anger in the period leading up to the shooting of his wife. The State could not have accurately presented its case without referring to the presence of marijuana in the house and also defendant's intention to distribute the marijuana. We conclude that the court was correct in its finding that the evidence of marijuana in defendant's home and evidence of defendant's intention to distribute the marijuana was admissible as an integral part of the criminal act of murder. The burden of proof was on the State to show the defendant had a specific intent to kill his wife, and was not provoked by her to such an extent that he should be convicted of manslaughter rather than second degree murder. As discussed above, the defendant also introduced evidence that the shooting was accidental. Therefore, the progression of defendant's anger was also relevant for the State to rebut such a claim.
Defendant further argues the state did not comply with the requirements of State v. Prieur, 277 So.2d 126 (La.1973), in *676 its notification to the defendant. When the prosecution intends to introduce evidence of "other crimes," Prieur, 277 So.2d 126, requires the State to furnish in writing to the defendant a statement of the acts or wrongful acts about which it intends to offer evidence and the State shall specify the exception to the general exclusionary rule on which it relies to offer evidence of other offenses. However, when the other crimes evidence introduced by the State formed an integral part of the crime for which the defendant was tried or is part of the res gestae of the offense, the State is not required to give notice. State v. Goza, 408 So.2d 1349 (La.1982). Since the evidence of marijuana in defendant's home and evidence of defendant's intention to distribute the marijuana were admissible as an integral part of the criminal act of murder for which defendant was on trial, no Prieur notice was required.
For the foregoing reasons, the third assignment of error is without merit.

EVIDENCE ABOUT PRIOR BEATINGS
Ms. Lacy testified that on the day of the victim's death shortly before the shooting incident while the defendant was cursing at his wife, the defendant showed her photographs of his wife taken after he had beat her in the past. Ms. Lacy testified that immediately after she was shown the pictures, the defendant pushed the victim and the chair in which she was sitting to the floor and then walked over to the gun rack and retrieved a knife which he threw at his wife. Shortly after Ms. Lacy viewed the pictures, the defendant shot the victim. Defendant claims the trial court committed reversible error in permitting hearsay testimony regarding the existence of photographs of the victim depicting "prior beatings" under La. Code Evid. art. 404(B).
The statement as to the "prior beatings," was made by the defendant and offered against him. Thus, it was a non hearsay statement under La.Code Evid. art. 801(D)(2)(a). Furthermore, the lack of physical evidence of the photographs does not render Ms. Lacy's testimony as to the content of the photos inadmissible hearsay.
Since defendant's statement was a necessary and concomitant incident of the criminal offense for which defendant is on trial, it was admissible under 404(B) because "it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it" and its purpose was "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." Brewington, 601 So.2d at 657. The defendant's statement was a necessary incident to the crime of murder and was admissible even though it referred to another crime committed by him.
Defendant argues that the notice given by the state of its intent to introduce defendant's statement about these pictures did not satisfy Prieur because the state did not specify the exception to the exclusionary rule upon which it relied for its admissibility. However, since the statement was a necessary incident of the crime charged, no Prieur notice was necessary. Goza, 408 So.2d 1349.
For the foregoing reasons, we conclude that the fourth assignment lacks merit.

DEFENDANT'S STATEMENT THREATENING TO KILL MS. LACY
By assignment of error, defendant claims he was denied a fair trial by the trial court's overruling of defendant's objection to the testimony of Dayna Lacy that the defendant threatened to kill her if she did not say that the shooting was an accident. Specifically, the defendant contends that this testimony was inadmissible because it constitutes evidence of the commission of another crime. For the reasons discussed above, the State asked Ms. Lacy if the defendant said anything to her "in the minutes following the time that he shot" the victim. Ms. Lacy responded that the defendant told her to say "that it was an accident, that the gun just went off while he was cleaning it. That if I didn't say it was an accident, that he would kill me too." His statement was an integral part of the offense for which defendant is being tried because defendant's threat to kill Ms. Lacy if she did not say the shooting was an accident was evidence of defendant's motive *677 and intent. Although the statement referred to other crimes evidence, it was a necessary incident to the murder. Thus, under Article 404(B), the statement was properly admitted by the trial court. Furthermore, we conclude that the statement was not unduly prejudicial and that the trial court did not abuse its discretion under Article 403.
Based on the foregoing, the admission of this evidence did not deprive defendant of a fair trial; therefore, the sixth assignment of error lacks merit.

"OTHER CRIMES" EVIDENCE IN DEFENDANT'S VOLUNTARY STATEMENT
At trial, the state moved to introduce into evidence S-20, a written statement made by the defendant on July 23, 1993. Defendant objected to its introduction since the statement contains references to other crimes, including assault and battery. The trial court ruled that the entire statement was admissible because it found that the statements contained in it were part of the continuing transaction surrounding the murder. By assignment of error, the defendant asserts that it was reversible error for the trial court to deny defendant's objection to the introduction of the written statement of defendant, or to deny redaction of the statement with reference to inclusion within the statement of evidence of other crimes or bad acts.
La.R.S. 15:450 provides that a defendant's statement sought to be admitted by the State against the defendant must be introduced in its entirety. However, when the statement contains references to other crimes evidence, which is inadmissible, the defendant enjoys the option of objecting to the inadmissible evidence and requiring the trial court to excise or edit the statement before admitting it. State v. Morris, 429 So.2d 111 (La.1983); State v. Lewis, 590 So.2d 752 (La.App. 3 Cir.1991). In fact, this court has determined that after a timely objection by the defendant, it is reversible error for the trial court to admit a statement in its entirety with inadmissible "other crimes" evidence in it without a redaction. Lewis, 590 So.2d 752.
In the statement, defendant said that immediately prior to the victim's death, he shot two or three shots around his wife, and she dropped to the floor. The statement also makes reference to defendant shoving his wife out of her chair and to defendant denying that the marijuana found in his home belonged to him.
This evidence, which defendant contends is "other crimes" evidence, concerned actions occurring immediately prior to the victim's death and were concomitant incidents of the criminal offense for which defendant is on trial. Thus, this evidence was admissible under Article 404(B) because "it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it" and its purpose was "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." Brewington, 601 So.2d at 657. Accordingly, the trial court did not err in admitting these portions of the statement. Furthermore, since the other crimes evidence introduced by the state formed an integral part of the crime for which the defendant was tried, no Prieur notice was necessary. Goza, 408 So.2d 1349.
However, defendant also admitted, in this voluntary written statement, that he had "slapped her [the victim] before to give her an attitude adjustment, I slapped her but I didn't hit her." Defendant was also asked if his wife seemed scared or concerned when he was shooting in her direction the day of her death, and defendant replied, "None what so ever, she knew that I wasn't going to shoot her, I have done it before, I have shook her up before and about 7 months ago I shot into the floor around her, she knew that I wouldn't shoot her intentionally." These crimes or prior acts were not an integral part of the act or transaction for which defendant is being tried and defendant's statement itself was not an integral part of the act or transaction since it was made after defendant was taken to the Beauregard Parish Sheriff's Office.
As stated above, the Louisiana Supreme Court in Prieur, 277 So.2d 126, held that when the prosecution intends to offer evidence of other crimes, the State must give *678 a defendant notice that evidence of other crimes will be offered and which exception to the general exclusionary rule the prosecution will rely on. Since these crimes or other wrongful acts were not admissible as an integral part of the act or transaction for which defendant is being tried, Prieur notice was required. Prieur, 277 So.2d 126; La.Code Evid. art. 1103; State v. Code, 627 So.2d 1373 (La.1993); State v. Jackson, 625 So.2d 146 (La.1993).
The defendant contends that the trial court erred in admitting this evidence because the State did not comply with Prieur. However, the requirements of Prieur are not intended to be "technical procedures sacramental to a valid conviction." State v. Banks, 307 So.2d 594, 597 (La.1975). Accordingly, substantial compliance with the mandates of Prieur is all that is required. State v. McDermitt, 406 So.2d 195 (La.1981); State v. Lee, 25, 917 (La.App. 2 Cir. 5/4/94); 637 So.2d 656, writ denied, 94-1451 (La. 10/7/94); 644 So.2d 631. The State's notice in the case before us was in response to defendant's Motion for Discovery and Inspection. The defendant asked to be informed of "the State's intent to offer evidence of the commission of any other crime, act, conduct, or declaration alleged to be admissible under the authority of LSA-C.E. art. 404(B)." The State indicated that it "intended to offer evidence of the commission of the crimes of Possession of Marijuana with the Intent to Distribute, Aggravated Assault and Simple Battery." Furthermore, the State attached a copy of the statement, which it intended to introduce, to its answer. Finally, this information was supplied to defendant on November 3, 1993, nine months before trial. The State clearly indicates that the exception under which the other crimes evidence would be admitted is Article 404(B); therefore, we conclude that the State substantially complied with Prieur and that the trial court did not err in allowing the statement in its entirety into evidence. Lee, 637 So.2d 656. The seventh assignment of error lacks merit.

MS. LACY'S TESTIMONY ABOUT THE DEFENDANT'S MINOR CHILD'S STATEMENT
At trial, Ms. Lacy testified that after the defendant walked over to the gun rack and loaded his gun, he began yelling at the victim to turn around while he was shooting around her with his rifle. The prosecution asked Ms. Lacy if Clifton, the son of the victim and defendant, had made any statements to his mother immediately after the defendant told her to turn around. Ms. Lacy replied that he did, but the defendant objected before she testified as to the substance of the statement. The trial court ruled that the statement was admissible, and Ms. Lacy testified that Clifton said: "Turn around Mama and maybe he won't shoot you."
On appeal, the defendant argues that it was reversible error for the trial court to overrule defendant's objections to the hearsay statement by Dayna Lacy and that it was reversible error to rule that the prejudice of such remark did not outweigh its relevancy.
Hearsay "is a statement ... offered in evidence to prove the truth of the matter asserted." La.Code Evid. art. 801(C). We conclude that this statement was not hearsay, because it was not offered to prove the truth of the matter asserted, but rather to explain the victim's actions immediately before her death in that Ms. Lacy testified that the victim turned around "[b]ecause her son Clifton told her, `Turn around, mama, and maybe he won't shoot you." Ms. Lacy then testified that the victim "turned to look at him, and sheafter glancingafter once looking at her son, she glanced over to her husband, and she looked at him, and that's went [sic] he shot her."
As discussed above, under La.Code Evid. art. 403, the trial court is vested with great discretion in determining whether the probative value of a relevant piece of evidence is substantially outweighed by the danger of unfair prejudice. Nigreville, 642 So.2d 216. This statement had probative value because it tends to show Clifton, the son, believed his father intended to shoot his mother. Intent is an important issue in the case at hand since the defendant claims the shooting was accidental. The statement also tends to show why the victim was shot in the middle of her forehead. Based on the foregoing, *679 we are unable to conclude that the trial court abused its discretion in determining that the prejudice of defendant's statement did not substantially outweigh its probative value.
For the foregoing reasons, the fifth assignment of error lacks merit.

TRIAL COURT'S REMARKS AND DENIAL OF MISTRIAL
After the close of the State's case, the trial court stated: "We shall now proceed with the defendant's case." The defense counsel approached the bench and stated his objection to the above comment because the defense was not planning on presenting any additional evidence. The trial court indicated that he planned to explain that to the jury and did not feel the comment was prejudicial to the defendant. The defendant then asked for a brief recess in order to avoid having to immediately stand and announce that was not going to present a case, which the trial court granted. The defendant then moved for a mistrial, stating the comment referred to defendant's right to silence. The trial court denied defendant's motion. After a brief recess, the defendant announced that it had no further evidence to introduce and the trial judge made the following comment to the jury:
Ladies and gentlemen, the meaning of that statement is that no further evidence will be presented to you in connection with this case. You must make your decision on the basis of the evidence that you have heard to this point. It is the State's burden of proof to convince you beyond a reasonable doubt that a crime was committed. The evidence that you have heard has come from witnesses that have been before you and been questioned and cross-examined by the defense, and the defense has presented evidence through that cross-examination process to you. So you will have to consider only the evidence that you have heard in connection with the case at this time.
The trial court reiterated in his final instructions to the jury that "[t]he defendant is not required to prove that he is innocent. The burden is upon the State to prove the defendant's guilt beyond a reasonable doubt."
By the eighth assignment of error, the defendant contends that the trial court committed reversible error in commenting upon the failure of the defendant to produce evidence despite the State's burden of proof, where the State had called the witnesses announced by defendant for sequestration, the defendant was not called to testify and the defense was forced to announce in response that it rested. Furthermore, by the ninth assignment of error, the defendant contends that the trial court committed reversible error in denying the motion for mistrial.
Under La.Code Crim.P. art. 770, "a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge ... refers directly or indirectly to ... [t]he failure of the defendant to testify in his own defense." A mistrial is a drastic remedy and is only warranted in those cases where there is substantial prejudice to the accused sufficient to deprive him of a fair trial. State v. Edwards, 420 So.2d 663 (La.1982).
On review of the record, we do not conclude that the trial judge's comment was either a direct or indirect reference to the failure of the defendant to testify. His comment in no way reflected an intent to emphasize defendant's failure to testify. Furthermore, we do not consider the trial court's comment to have resulted in any prejudice to the defendant; therefore, the comment made by the trial judge in the case sub judice did not warrant a mistrial. The explanation given the jury as to why defendant was not required to present any additional evidence as well as the trial judge's final instructions to the jury lend further support to this finding.
For the foregoing reasons, the eighth and ninth assignments of error lack merit.

ERROR PATENT
Pursuant to La.Code Crim.P. art. 920, we have reviewed the record for errors patent and have discovered one. The record does not reflect that the defendant was given credit toward service of his sentence for time *680 spent in actual custody prior to the imposition of sentence. La.Code Crim.P. art. 880. Article 880 applies to life sentences. State v. Howard, 626 So.2d 459 (La.App. 3 Cir.1993). Defendant's sentence therefore shall be amended to reflect that the defendant is given credit for time served prior to the execution of the sentence. La.Code Crim.P. art. 882(A). We remand this matter to the district court, ordering it to amend the commitment and minute entry of the sentence to reflect that the defendant is given credit for time served. See State v. Moore, 93-1632 (La.App. 3 Cir. 5/4/94); 640 So.2d 561, writ denied, 94-1455 (La. 3/30/95); 651 So.2d 858.

DECREE
For the reasons assigned, defendant's conviction and sentence are affirmed. The case is remanded to the trial court to amend the commitment and the minute entry of the sentence to reflect that the defendant is given credit for time served.
AFFIRMED AND REMANDED.